## JACKSON v. THE STATE.

1. A husband is not justifiable in killing a man whom he knows or believes to be his wife's paramour when the latter is peaceably working at his daily labor in the field and the wife is at her home more than a mile distant. Under these circumstances there is no such urgent and pressing danger of a new act of adultery as to make the killing absolutely necessary in order to prevent it. It is only where there is such absolute necessity that a killing perpetrated to prevent adultery with the slayer's wife is upon the same footing of reason and justice with cases of justifiable homicide expressly enumerated in the code. The doctrine of reasonable fear as a defence does not apply to any case of homicide where the danger apprehended is not urgent and pressing, or apparently so, at the time of the killing.

2. A request to charge the jury which has no proper application either to the evidence or to the prisoner's statement, should be declined. For this reason, if for no other, it was not error to

91  271
91  728

91  271
101  24

91  271
f107 689

91  271
114  446

91  271
e120 873

91  271
123  435

91  271
124  773

deny a request couched in these terms: " If you believe from the evidence that when the prisoner came upon the deceased, upon the sight of him he became so enraged at the thought of past or attempted wrongs upon his wife or family, that reason was dethroned by passion, and carried away by such passion and not in a spirit of revenge, that the defendant under such influences killed the deceased, such killing could not be of a higher grade than manslaughter."

3. Where there is nothing in the evidence to indicate that the killing was not voluntary, and where no charge is requested on that subject, involuntary manslaughter is not an issue in the case, and no allusion should be made to it in charging the jury, even though the prisoner's statement by indirection suggest such a theory.

4. Where there was evidence tending to impeach one of the State's witnesses by contradictory statements as well as by bad character, and the court charged the law applicable to impeachment by the latter means, but omitted, apparently by inadvertence, to mention the former, this is not cause for a new trial, the attention of the court not having been called to the omission by counsel, and the general charge on the subject of conflict and credit of witnesses being full and correct.

5. Where the court charged the jury that they were to pass upon the law and facts both, apply the facts to the law as given them in charge, and from both together make up a general verdict of guilty or not guilty upon the issue submitted, and in that way judge of both the law and the facts, it was not error to charge also thus: " The law of the case I am responsible for. It is made my duty to instruct the jury properly as to the legal principles applicable to this case, and you are bound to take the law of the case from me, just as I am bound to absolutely refrain from suggesting or intimating any opinion at all about the evidence. The one is your domain; the other is mine."

6. It is not true that if the jury have *any* doubt as to which grade of homicide the accused has committed, they should give him the benefit of the doubt and find him guilty of the lesser grade. Only a reasonable doubt would work this consequence.

7. The verdict was correct, and there was no error in denying a new trial.

February 20, 1893.

Before Judge MILLER; motion for new trial before Judge BARTLETT. Bibb superior court. November term, 1892.

ROLAND ELLIS and E. A. COHEN, for plaintiff in error.

J. M. TERRELL, attorney-general, and W. H. FELTON, Jr., solicitor-general, *contra*.

BLECKLEY, Chief Justice.

1. There is no law of this State, or of any other State or country of which we have ever heard, which will justify a husband in going into a field where a man is at work and killing him because he has committed adultery with the slayer's wife. To do such an act is murder absolute and unqualified. It is taking the law in one's own hands and punishing a man with death for a past transgression. This is contrary to all principle of law and the administration of law. Under the facts of this case there was no necessity for the killing to prevent a future act of adultery between the slain man and the slayer's wife. No such act was in progress, or could have been in progress, for the parties were separated by such distance that the act was impossible. The doctrine of reasonable fear as a defence has no application to any homicide where the danger apprehended is not urgent and pressing, or apparently so, at the time of the killing.

2. The request to charge the jury touching the prisoner's excitement to such an extent that his reason was dethroned by passion, and he was carried away by the passion, had no application either to the evidence or to the prisoner's statement. Without considering other objections to it, this was sufficient to render it an improper charge to submit to the jury. In his statement the prisoner did not pretend or profess to have acted under any such influence, and there was no evidence giving the slightest color to such a theory.

3. Nor was there any evidence to indicate that the killing was not voluntary, and no charge was requested on the subject of involuntary manslaughter. It was not an issue in the case, and the court was right in making no allusion to it in his charge to the jury. If the indirect suggestion bearing that way in the prisoner's statement was any ground for such a charge, an express

v91 18

request should have been made to give the charge. On the subject of conflict of evidence and credit of witnesses the charge was full and correct. Apparently by inadvertence, there was an omission, in charging on the subject of impeaching witnesses, to mention impeachment by contradictory statements. There was evidence tending to impeach one of the State's witnesses by that means as well as by proof of bad character. The attention of the court was not called to the omission, although in the nature of things counsel must have known that it was most probably made by inadvertence. We think this mere slip is no cause for a new trial.

5. On the subject of taking the law from the court and applying that law to the facts of the case, the charge was not in conflict with what has become the settled meaning of the rule that the jury are judges of the law as well as of the facts. The organ for acquainting them with the law is the court, and when they thus ascertain it they are to apply it to the evidence and from both together make up a verdict of guilty or not guilty upon the issues submitted. By saying "the one is your domain—the other is mine," the court did not exclude, nor mean to exclude, the jury from dealing with law after he had expounded it to them, for the very object of instructing them upon it was to enable them to use it in applying it to the facts of the case and arriving at their verdict.

6. It is not a correct proposition of law, that if the jury have any doubt, but only if they have any reasonable doubt, as to which grade of homicide the accused has committed, they should give him the benefit of the doubt and find him guilty of the lesser grade. They can find the higher grade, not alone where they are convinced beyond all doubt, but where they entertain no reasonable doubt of that being the real grade of the offence.

7. If evidence can manifest guilt of the crime of murder, the evidence does so in this case. It certainly does not shut out sympathy for this unfortunate man, but it manifests fully his guilt under the law. There was no error in denying a new trial.      *Judgment affirmed.*