## WILLIAMS *v.* THE STATE.

1. It is not incumbent on a trial judge, in the absence of a timely written request to charge, to specially call the attention of the jury to a theory suggested by particular testimony relied on by one on trial for murder as establishing his plea of self-defense, and instruct them that they should consider this particular evidence in determining whether or not, at the time of the killing, the accused was actuated by the fears of a reasonable man.
2. An omission to charge a proposition of law favorable to the accused can not be taken advantage of by assigning error upon a wholly unobjectionable instruction given to the jury.
3. In charging the jury in the present case, the trial judge did not, by any error of commission or omission, deprive the accused in any measure of the benefit of his plea of self-defense.
4. There being evidence upon which the jury could properly find, as they did, that the accused was guilty of voluntary manslaughter, the court did not err in charging them as to the law bearing upon that grade of homicide.

Submitted July 19,—Decided August 10, 1904.

Indictment for murder. Before Judge Freeman. Coweta superior court. June 20, 1904.

*A. H. Freeman*, for plaintiff in error.
*H. A. Hall, solicitor-general*, contra.

EVANS, J. The accused was brought to trial on an indictment for murder, and the jury returned a verdict of voluntary manslaughter. He made a motion for a new trial, and to the judgment overruling this motion he excepts.

1. One of his complaints is that the court failed to charge the jury as to the law bearing on the evidence introduced by him as

to the character of the deceased, for turbulence and violence, the contention of the accused being that in committing the homicide he acted under the fear that his life was in danger or that a felony was about to be perpetrated upon him.    In our opinion, if the accused desired any special instruction given the jury respecting the bearing which this particular evidence had upon the defense interposed by him, he should have presented to the court a timely written request to charge on the subject.    Without such a request, it was not incumbent on the court to specially call the jury's attention to this particular evidence and instruct the jury that they should consider it in determining whether this defense was or was not interposed in good faith.    In this connection, see Knight v. State, 114 Ga. 48, wherein it was held that "Failure by the judge to apply a rule of evidence to the testimony of a particular witness is not, in the absence of a request so to do, erroneous."    In that case complaint was made that the court did not, of its own motion, caution the jury that certain evidence, introduced by the State to impeach witnesses testifying in behalf of the accused, ought not to be considered by them for any other purpose.

2. It is further insisted by the plaintiff in error that the court ought to have charged concerning the character of the deceased for turbulence and violence, while instructing the jury as to certain other circumstances to which they could look in determining whether or not the accused acted under the fears of a reasonable man; and error is assigned on the charge given upon this subject, because the court did not, in the same connection, tell the jury they might also consider the evidence as to the character of the deceased for turbulence and violence.    The charge given was unobjectionable; and even had it been incumbent on the court to charge concerning the character of the deceased, the omission so to do could not be taken advantage of by assigning error upon this charge.    Roberts v. State, 114 Ga. 450.

3. In stating the contentions of the accused, the court said: "He says he had a right to kill to save his own life; that he was acting in self-defense to prevent a serious personal injury, it being a felony, from being committed upon him, — to prevent a felony from being committed upon him."    The error assigned upon this instruction is that it did not correctly state the defend-

ant's defense, and was not a correct statement of the law, in that it imposed upon the defendant the necessity of showing "that a felony was being committed upon him, when it was only necessary to show, and it was defendant's material contention, that the circumstances were sufficient to excite the fears of a reasonable man that a felony was apparently about to be committed upon him." If the court did not correctly understand and state to the jury the contentions of the accused, it would seem that his counsel ought to have informed the court as to what such contentions really were. But be this as it may, the court did, of its own motion, give the accused the full benefit of his "material contention," by instructing the jury as to his right to act upon the fears of a reasonable man that a felony was apparently about to be committed upon him. The effect of misstating the contentions of the defendant was not, therefore, to deprive him of the defense upon which he mainly relied; and as the court was merely endeavoring to state his contentions, and not to charge as to the law governing the case, what was said in this connection certainly did not impose upon the accused the necessity of showing that a felony was actually being committed upon him. Indeed, when the court undertook to instruct the jury as to what would constitute a good defense, he expressly told them that the accused would be justified and they should acquit him if, "at the time the killing occurred, the defendant believed the deceased was about to kill him or about to commit a felony on him," provided he acted under the fears of a reasonably courageous man, "and the circumstances were such as to excite the fears of a reasonable man."

In charging upon the law of self-defense the court informed the jury that "justifiable homicide is the killing of a human being in self-defense, as against one who manifestly intends or endeavors, by violence or surprise, to commit a felony upon him," and that, ".as against one who manifestly intends by violence or surprise to commit a felony upon his person, such person has a right to take human life, if it is necessary for his defense." This charge was fully in accord with the definition of justifiable homicide given in the Penal Code, § 70. However, complaint is made that this charge "withdrew from consideration by the jury the apparent necessity to kill, and restricted them to a consideration of the

question of the absolute necessity to kill." The charge can not have had this prejudicial effect, for the court followed it with a correct instruction as to the law with regard to the fears of a reasonable man acting under an apparent necessity to kill, and in the same connection gave the instruction above set out, touching the right of the accused to kill the deceased if, "at the time the killing occurred, the defendant believed the deceased was about to kill him or about to commit a felony on him."

The court, while charging as to what the law regards as the fears of a reasonably courageous man, told the jury that the danger "apprehended must be urgent and pressing, or apparently so, at the time of the killing." It is insisted by the plaintiff in error that this instruction was not applicable to this case, and could only apply to a case where the evidence disclosed "a mutual intention to fight." We can not concur in this view. "A bare fear" of injury can never be regarded as sufficient to justify a homicide. Penal Code, § 71. And, as was said in the case of *Jackson* v. *State*, 91 *Ga.* 271 (1): "The doctrine of reasonable fear as a defense does not apply to any case of homicide where the danger apprehended is not urgent and pressing, or apparently so, at the time of the killing."

Exception is also taken to the following charge of the court: "The law does not require, gentlemen, that a defendant should wait until an actual assault upon him has reached a stage where resistance would be useless. If the situation is such that a reasonable man, in the situation of the defendant, would be justified in believing that his life was in danger, or that a felony was about to be committed upon him, he could act; and what is the apparent danger should be considered by you as the real danger." An instruction more favorable to the accused would have been wholly unwarranted. Yet he contends that this charge had the vice of leaving it "discretionary with the jury to consider the apparent danger the real danger, when the jury should have been instructed that where the circumstances were sufficient to excite the fears of a reasonable man that his life was in danger, or that a felony was about to be committed upon him, under the law an apparent danger is the same as a real danger." This complaint is altogether too hypercritical. The court told the jury that apparent danger "should" be considered by them as real danger,

and did not, as claimed, leave it "discretionary with the jury to consider the apparent danger the real danger." The unfairness of the criticism made upon this charge is emphasized by the fact that it was immediately preceded by the following full and clear instruction: "If you believe from all the circumstances of the case that the situation was such as to excite the fears of a reasonable man, in the situation of the defendant, that a felony was about to be committed upon him, or that his life was in danger from the act of the decedent, and if he acted under the influence of those fears, and not in a spirit of revenge, and took the life of the decedent, then you should acquit him, gentlemen, notwithstanding you may believe that he was in no danger, and that if he had not acted, the decedent would not have committed a felony upon him."

It would certainly seem, from what is said above, that the trial judge very fully and fairly presented to the jury the defense relied on by the accused. But he has still another complaint, viz., that the court erred in not charging the jury: "If you find that the words, threats, menaces, and contemptuous gestures, if there were such, were sufficient to excite the fears of a reasonable man, in the situation of defendant, that his life was in danger, or that a felony was about to be committed upon him, and the defendant acted under the influence of those fears, and not in a spirit of revenge, the killing would be justifiable." Had counsel for the accused presented to the judge a timely written request to so charge, such request might very properly have been complied with. *Cumming* v. *State*, 99 *Ga.* 662. But as no request to charge was made, this assignment of error has no merit, under the ruling announced in the first division of this opinion.

It is barely inferable from reading another ground of the motion for a new trial that the movant undertook to assign as error the giving of a strictly correct charge on the subject of reasonable fears excited by words, threats, menaces, and contemptuous gestures, because the court did not in the same connection give to the jury the desired instruction last above quoted. Nothing can be gained under this ground of the motion, for the following reasons: (1) the complaint which we infer was intended to be presented is not made with sufficient clearness, for the language of that ground is so confused that it is impossible (without reference to the copy of the

whole charge sent up in the record) to determine what the court
really charged or what the accused claims should have been added;
(2) any omission to charge in this connection something else perti-
nent and helpful to the accused should be assigned as error, rather
than the giving of a correct charge, as pointed out in the second
division of this opinion; and (3) we find, upon an examination of
the entire charge of the court, that the trial judge practically
covered the whole subject of reasonable fears, including such as
may sometimes arise from threats, menaces, etc.; so that if any
additional instructions on this subject were really desired by the
accused, he should have requested the court to give the same.

4. The accused was convicted of voluntary manslaughter, and
contends that this result was brought about by error committed
by the court in charging the jury as to the law in regard to that
grade of homicide, when "neither the evidence nor the statement
of defendant raised the question of manslaughter." A review of
the evidence and the prisoner's statement is thus rendered neces-
sary. It appears, from the testimony of witnesses who were
present when the homicide occurred, that the accused, the de-
ceased, and two other negroes were walking along a country road.
They had "drunk a little liquor and were all in a jolly humor."
Only one of them, the deceased, had a pistol. It belonged to the
accused. The crowd had previously been gambling, and the ac-
cused let the deceased "have the pistol to get some money to play
the game," and he thus came in possession of it. The deceased
was quite boisterous, and, after the crowd started down the road,
caught the accused and "told him he shouldn't go home." The
deceased then had the pistol out, and made two of the party drink
some whisky which he pulled out of his pocket. He then told
his companions "to get in front of him and march," that he was
their "captain," and carried them down the road a piece. He then
said "he was going to shoot one of them. He said he wanted to
shoot him a man; wanted to see him fall." The defendant com-
menced talking to him, and he said the defendant was the one he
was going to shoot. Defendant then turned his back on the de-
ceased and commenced crying. The defendant went off to the
side of the road crying, and stayed there until the deceased
"taken pity on him and went to him," saying: "You know I aint
going to bother you." "They went on then and made friends for

a while. They were friends about a minute." The deceased "started the difficulty the second time, . . snatching out the pistol again" and saying: "I am going to kill old Bud,"—referring to the accused. The deceased started after the accused, who wrung the pistol out of the hand of the deceased and told him: "Me and you don't want to fight." The accused immediately gave the pistol back to the deceased, saying: "We don't want to fight; put the pistol in your pocket." One of the others induced the deceased to do so. The deceased "drilled him [the accused] again up and down the road. He threatened to kill him; said he was going to kill him." The deceased slapped the accused and "drilled" him and the others some distance further down the road. One of them observed two ladies approaching in a buggy, and told the deceased to put up the pistol, as he would "scare the white ladies." "He then stuck it down in his pocket and [the accused] whispered something to him." He replied, with an oath: "I just want to kill one man." The accused said, "Hold on;" and, as the deceased was in the act of taking the pistol from his pocket, "snatched the pistol and run off back of him and told him to stand back." The testimony of the witnesses is somewhat in conflict as to what next occurred. One of them, who was introduced by the State, testified that after the accused got the pistol, the deceased started towards him; that the accused immediately shot the deceased in the leg and told him to get back off him; that "after defendant shot the deceased the first time, deceased started to run and had run six yards when [the accused] shot him the second time," inflicting the mortal wound in his side which caused his death. This same witness, however, subsequently stated, during his examination, that "deceased had no more than turned around when [the accused] shot him the second time. Deceased turned to get away, and then defendant shot him the second time. The first time he shot him in the knee, and deceased started to turn to go, and defendant shot him the second time. I didn't see a thing deceased had in his hand when [the accused] shot him first time. I didn't see deceased take anything at all out of his pocket, nor he didn't try to put his hand in his hip pocket. He didn't put his hand in his pocket to try to draw any weapon at all. Defendant shot deceased the first time in the leg, and [he] whirled to run, and defendant shot him the second time in the

right side. The shot in his side killed him. Deceased then run a pretty good piece, when [the accused] shot at him the third time."

Under this somewhat confused account of the homicide, it would seem that the accused was guilty of deliberate murder. But there was other testimony from which the jury might well have concluded that the truth of the case was as follows: Only two shots were fired. When the accused last took the pistol from the deceased, the latter started towards the former; whereupon he immediately fired, striking the deceased in the knee. While the deceased had his hand in his pocket, he had made no attempt to draw a knife or any other weapon, nor had he manifested any intention of committing any serious bodily harm upon the person of the accused, nor made any threat to do so. The two shots were fired in quick succession, the second before it became evident to the accused that the deceased was no longer advancing upon him but was turning to flee. The accused did not act in a spirit of revenge, as he had endeavored up to the last moment to avoid any difficulty, but under a groundless fear that, unless he shot, the deceased would inflict upon him great bodily injury.

In his statement before the jury, the accused very stoutly asserted that he was not actuated by any spirit of malice or resentment, and shot the deceased only because he was "scared" the deceased was going to kill him. The jury were authorized to accept as true this much of his statement. They were also at liberty to reject (as an afterthought) the further assertion of the accused that, at the time he fired two shots in rapid succession, the deceased was advancing with an open knife in his hand. This is especially so in view of the fact that none of the eye-witnesses of the homicide, though having equal opportunities of observation, and though one of them testified in behalf of the accused, bore him out in this assertion. It is in just such a case as the present (where it would be manifestly unjust to the accused to hold, as matter of law, that, if the homicide was not wholly justifiable, he was actuated by malice and not by a sense of cowardly fear) that the jury should be left to determine whether, if they find his plea of self-defense is without merit, he is guilty of murder or only of voluntary manslaughter. The present case did present this ques-

tion for their determination; the trial judge rightly submitted it to them, and no reason appears why their verdict should be set aside.                    *Judgment affirmed.   All the Justices concur.*