## TOLBIRT *v.* THE STATE.

1. The finding of the trial judge on conflicting affidavits, as to alleged misconduct of the bailiff having charge of the jury while considering as to their verdict, will, in the absence of abuse of discretion, be upheld by the Supreme Court.
2. It is proper for the judge to frame his general charge to the jury upon the evidence alone, appropriately instructing them, however, at some stage thereof, with respect to the prisoner's statement.

3. The charge as to the presumption of malice arising upon proof of a homicide was not open to the exceptions made thereto.

4. "The doctrine of reasonable fear as a defense does not apply to any case of homicide where the danger apprehended is not urgent and pressing, or apparently so, at the time of the killing."

5-14. There was no material error in any of the charges complained of; the court did not err in its failure to charge as alleged; the evidence fully warranted the verdict, and the court did not abuse its discretion in refusing to grant a new trial.

Argued December 18, 1905.—Decided February 15, 1906.

Indictment for murder. Before Judge Bartlett. Haralson superior court. October 9, 1905.

*J. M. McBride, S. L. Craven,* and *W. R. Hutcheson,* for plaintiff in error. *John C. Hart, attorney-general,* and *W. K. Fielder, solicitor-general,* contra.

FISH, C. J. A. G. Tolbirt was convicted of murder and recommended to life imprisonment, on July 12, 1905. He made a motion for a new trial, which was refused, and he excepted.

1. One of the grounds of the motion was, that the jury was improperly influenced to agree upon a verdict by the misconduct of J. W. Bagwell, deputy sheriff, and T. P. Eubanks, the bailiff who had the jury in charge. In support of this ground, the movant introduced in evidence the affidavit of Bagwell, wherein he deposed, that he was deputy sheriff attending the term of the court at which the accused was convicted; that while the jury was considering the case, Eubanks, the bailiff who had the jury in charge, requested deponent to inform the judge that the jury said they could not agree on a verdict; that deponent gave the judge such information, and was directed by him to ask the jury how they stood; that deponent went to the jury-room and delivered the judge's message, whereupon the jury requested him to retire until they could take another vote, and that after taking the vote they informed the bailiff, Eubanks, how they stood. The affidavit of Eubanks was also introduced by the movant. He deposed as follows: The jury requested him to inform the judge that they could not agree upon a verdict, and he asked Bagwell, the deputy sheriff, to convey this information to the judge. Soon thereafter Bagwell returned and went into the jury-room and asked them how they stood in the case. The jury asked Bagwell to retire until they could take another vote, and in a few minutes the jury called deponent and told him they

stood eight for conviction and four for acquittal. Deponent then went to the judge and gave him this information. A short time after this, "deponent went to the jury-room, opened the door, and told them that the judge had directed him to tell them that they must make a verdict. Soon after this the jury was taken to the hotel for dinner, and in a few minutes after they had returned from dinner to the room the jury returned a verdict." Movant and each of his counsel made affidavits that they had no notice of the facts alleged in these affidavits until after the verdict was rendered and the jury discharged. The movant also introduced the affidavits of the ordinary and the clerk of the superior court, as to the good character of Bagwell and Eubanks. The trial judge, in a note to the bill of exceptions, states that he did not direct Bagwell to inquire of the jury how they stood, nor did he instruct Eubanks, the bailiff, to tell the jury they must make a verdict. The State submitted the affidavits of the following named persons, all of whom were members of the jury that tried the case, who respectively testified as herein indicated. W. V. Nestlehutt deposed, "that there was no statement made to the jury on July 12th, or at any time, by J. A. Bagwell or any other person, that the judge wanted to know how the jury stood, or that he would keep the jury for the remainder of the week and the next week, [or] that the jury must make a verdict." J. T. Hitt testified: "I did not hear Bagwell or Eubanks or any other officer say that the judge said he would keep the jury all the week or next week, or anything like that; and if such statement had been made to the jury, deponent would have heard it." P. S. Dean and Jacob T. Cupp testified, that if there was any undue or improper communication with the jury on July 12 by Bagwell or any one else, they knew nothing of it. J. A. Nicholson deposed, that on the morning of July 12, 1905, J. A. Bagwell came to the jury-room and said the judge said "nothing short of a verdict will do him." J. A. Copeland deposed, "that the jury informed the judge that the jury was not likely to agree, and the officer in charge of the jury, Tom Eubanks, stated to the jury that the judge said for them to make a verdict." T. J. Wood testified, "that on the morning of July 12, 1905, some one knocked at the door and made some statement to some one of the jurors. Deponent did not hear what he said, or, if he did, does not remember what it was. In a short time he came back and said that nothing

short of a verdict would satisfy him." B. Z. T. Bush testified, that "J. A. Bagwell, deputy sheriff, came to the door of the jury-room and said the judge wanted to know how the jury stood. He was told that there were eight for conviction and four for acquittal. He went away, and shortly returned and stated that the judge said he would keep us over the next week, that we had to make a verdict. This statement was also made by the bailiff, Eubanks." Each of these jurors, except Nestlehutt, testified that the verdict rendered was his verdict, made up from the law and the evidence in the case, and was not influenced by any communication made to the jury. The solicitor-general submitted his own affidavit, to the effect that the remaining two jurors declined to make affidavits to be used in the case.

"The affidavits of jurors may be taken to sustain, but not to impeach their verdict." Civil Code, § 5338. According to this rule, so much of the affidavits of the jurors as tended to show that the deputy sheriff or the bailiff had improper communications with the jury could not be considered by the judge, in passing upon the issue as to whether such communications were had with the jury; for if they were, it would be cause for a new trial, though the judge did not authorize them. *Gholston* v. *Gholston*, 31 *Ga.* 625. As the rule just referred to is so well settled, we take it that the judge did not consider that portion of the affidavits of the jurors to the effect that such communications were had. The question of fact, as to whether the communications in question were had with the jury, depended upon the credit given by the judge to the affidavits of Bagwell and Eubanks that they were, and that of the juror Nestlehutt that they were not, which was, to some extent, supported by the affidavit of the juror Hitt that he did not hear such communications, and that if they had been made he would have heard them. The findings of the trial judge on conflicting affidavits as to alleged misconduct of the jury while considering as to their verdict will, in the absence of abuse of discretion, be upheld by the Supreme Court. *Buchanan* v. *State,* 118 *Ga.* 751; *King* v. *State,* 119 *Ga.* 426; *Sullivan* v. *State,* 121 *Ga.* 183, 187; *Desverges* v. *Goette,* 121 *Ga.* 65. The same rule clearly applies here. The judge, in overruling the motion for a new trial, necessarily held that the alleged improper communications were not had with the jury.

2. Complaint was made of the following charge: "It is your duty

to find the facts from the testimony submitted on the trial of this case. *You are not authorized to go outside of the testimony to find the facts in the case.* On the trial of this case you are the judges of the law and the facts. You receive the law that should govern you in your consideration from the court. *You are and should be bound by the law as it is written and given you in charge by the court.* That is the means and the only means by which you are to find out what the law is, *just as the testimony put before you is the only means by which you are to find out what the facts are in the case. After receiving the law from the court and finding out what the facts are from the testimony submitted on the trial of the case, you are then to judge of them. You are to say what are the facts according to the testimony;* what is the law according to the charge of the court." The assignment of error was, that the portions of the charge which we have italicized "confined the jury to the sworn testimony in the case to find the facts, and deprived defendant of the benefit of his statement to the jury." We think that what the court evidently intended to impress upon the minds of the jury might have been more aptly expressed, but are confident that the language used, when taken in connection with what immediately preceded it, as appears from the charge sent up as a part of the record, was not calculated to induce the jury not to give due weight to the prisoner's statement. The court had just called the attention of the jury to the fact that reference had been made to a former trial or trials of the case, and instructed them that they were not to be influenced in any way by this fact; that they should try the case as though there had been no former trial; that the trial was a de novo investigation, separate and distinct from any former trial, etc. Then, after the statement that the judge did not mean by anything he might say to intimate to the jury what had or had not been proved, came the instructions in question. The purpose of the court, it seems clear, was to inform the jury that they were the sole judges of what the facts in the case were, and that in finding the facts they could consider only the evidence before them. The court had just previously instructed the jury fully and accurately as to the law in reference to the prisoner's statement; and it has frequently been held that it is proper for the judge to shape his general charge to the jury upon the evidence alone, appropriately instructing them, however, at some stage of the charge, with re-

spect to the prisoner's statement. *Hoxie* v. *State,* 114 *Ga.* 19, and cit.

3. Another charge excepted to was: "When the homicide is proven, the law presumes malice; and unless the evidence should relieve the slayer, he should be found guilty of murder. When the killing is shown, it is on the prisoner to justify or mitigate the homicide." The exceptions were, (1) that the charge "was not authorized by the evidence;" (2) "was not properly adjusted to the facts in the case," and (3) "deprived defendant of the evidence of his claim and admission that he shot the deceased in self-defense." None of the exceptions was well taken. The first sentence of the instruction now under consideration substantially states the law on the subject, as held in many cases by this court. *Mann* v. *State,* ante, 760, and cit. The second sentence of this instruction, however, is not an accurate statement of the law, for the reason that it is not incumbent on the slayer to show circumstances of alleviation or justification of the homicide when such circumstances arise out of the testimony produced against him. *Mann's* case, supra. But the charge was not excepted to on this ground; and we may say that, even if it had been, the error was not cause for a new trial in this case, as the evidence introduced by the State tended to show that the homicide was committed by the accused without legal provocation or extenuating circumstances. In such a case the charge given was authorized by the evidence and was properly adjusted to the facts, if the jury believed the evidence for the State. Nor was there any merit in the third exception, that the charge "deprived defendant of the evidence of his claim and admission that he shot the deceased in self-defense." The charge certainly left the jury free to consider the evidence submitted in behalf of the accused, as well as his statement made to the jury, to the effect "that he shot the deceased in self-defense," and to give such evidence and statement the credit and weight the jury thought they deserved. Counsel for plaintiff in error cite *Perkins* v. *State* and *Green* v. *State,* decided during the present term (ante, 6, 343); but an examination of these cases will disclose that no ruling made in either is in point here. As those cases were under review in *Mann* v. *State,* supra, and were there fully discussed in an able and exhaustive opinion delivered by Mr. Justice Evans, on the subject

of the rule of presumption when a homicide is proved, we forbear to say more in reference to them.

4. The court did not err in instructing the jury that "The doctrine of reasonable fear only applies when the danger is urgent and pressing, or apparently so, at the time of the homicide." *Jackson* v. *State,* 91 *Ga.* 271; *Williams* v. *State,* 120 *Ga.* 873.

5. The court charged the jury that if the accused killed the deceased, and if, at the time, the deceased was manifestly intending or endeavoring to commit a felonious assault upon the accused, the latter would be justifiable in defending himself from such an assault, "and if necessary, or apparently so, to prevent such assault, the defendant would be justifiable in taking the life of the deceased, and  .  .  under such circumstances should be acquitted." The only assignment of error on this charge, urged in the brief of counsel for plaintiff in error, is that the jury must have understood from it that before the accused would be justifiable there must have been an actual necessity for the killing. Manifestly the charge was not open to this criticism.

6. The charge that if the deceased was the aggressor and was attempting to shoot the accused, the latter would be justified in defending himself, "as before stated," was not tantamount to an instruction that "the deceased must have been the aggressor and  .  .  attempting to shoot defendant, before defendant could be justified."

7. Nor could the plaintiff in error justly complain of a charge that "The defendant would be justifiable, if there be a reasonable doubt as to whether he acted under such fears, or had reason to fear that it was necessary to kill to save his own life."

8. The court instructed the jury as follows: "Reference has been made to evidence taken on a former trial or trials of this case. I charge you that you are in no way concerned with a former trial or trials," etc. The exception to this charge was, that it in effect instructed the jury "that they could not consider the evidence of the witness, Miller, taken on a former trial and introduced by the defendant on this trial to prove contradictory statements made by said witness." This was not a good exception, for the reason that it does not appear from the motion what Miller's testimony was.

9. During the charge, the court stated to the jury, that, in reply to the contention of the accused that the homicide was justifiable, the State contended that the accused was the aggressor and brought

on the difficulty, and that if any necessity existed at the time of the homicide for the accused to take the life of the deceased, the accused brought about such necessity, and therefore that he could not take advantage of a necessity brought about by himself to take the life of the deceased. Such statement was not justly subject to criticism on the ground that "it was argumentative," or upon the ground that "it was not authorized by the evidence."

10. The court instructed the jury, that if they should find from the evidence, beyond a reasonable doubt, that at the time of the homicide the deceased was not attempting to shoot the accused, but that the gun of the deceased was discharged in a struggle over it, caused by the accused attempting to take it from the deceased; that there was no necessity, or apparent necessity, for the accused to shoot the deceased to save himself from a felonious assault; that the circumstances were not sufficient to excite the fears of a reasonable man; that the accused was not in danger of any great bodily harm, or of a felony being committed on him by the deceased; and that the accused intentionally shot and killed the deceased, with malice aforethought, either express or implied, then the offense would be murder, and it would be the duty of the jury to find the accused guilty. Error was assigned upon this charge upon the following grounds: that "it was unauthorized by the evidence;" that "it assumed that at the time of the killing the deceased was not attempting to shoot defendant;" that "it placed upon defendant the burden of proving that he was in great bodily harm or of a felony being committed upon him by the deceased," and that "it was not properly adjusted to the facts and issues in the case." None of these assignments of error was meritorious, as the charge was not erroneous for any of these reasons.

11. The following charge was also excepted to: "If the defendant . . assaulted the deceased, [the latter] had a right to use such force as was necessary to prevent such assault, and if the defendant shot and killed the deceased when the deceased was using such force only, or making such resistance only, as was necessary to defend himself from the assault made on him by the defendant, the defendant would not be justifiable in killing the deceased for defending himself from the felonious assault made upon him by the defendant." The exceptions were, that the charge "was unauthorized by the evidence," that "it assumed that the defendant

assaulted the deceased," and that "it was not properly adjusted to the facts and issues in the case." None of these exceptions was meritorious.

12. "Because the court erred in failing to charge on the bad character of the deceased for violence" was an assignment of error which was without merit.

13. There are several grounds in the motion for a new trial, based on alleged errors in the court's instructions to the jury, and on the failure of the court to charge in certain respects, which we do not deem it necessary to further notice, for the reason that when this case was before this court on a former occasion (119 *Ga.* 970) similar assignments of error were passed on and ruled adversely to the plaintiff in error.

14. We have very carefully studied the evidence in the record, and have no hesitancy in reaching the conclusion that it was amply sufficient to warrant the verdict. The court did not err in overruling the motion for a new trial.

*Judgment affirmed. All the Justices concur, except Atkinson, J., who did not preside.*