### 556. LEE *v.* THE STATE.

The verdict is sustained by the evidence, the law was correctly presented by the trial judge in his charge, and no reason appears why a new trial should be granted.

Conviction of manslaughter, from Clayton superior court— Judge Roan. May 24, 1907.

Argued July 17,—Decided September 19, 1907.

*Watterson & Blalock, Candlers, Thomson & Hirsch, R. L. D. McAllister,* for plaintiff in error.

*William Schley Howard, solicitor-general,* contra.

RUSSELL, J. The plaintiff in error was indicted for murder, and convicted of voluntary manslaughter. He excepts to the overruling of his motion for a new trial, and assigns error as to certain instructions given by the trial judge in his charge to the jury, as well as upon the judge's refusal to charge. He complains of the admission of evidence as to dying declarations, and of the failure of the State to introduce the testimony of a certain witness. In view of the fact that the plaintiff in error was found guilty of voluntary manslaughter, and not of murder, some assignments of error are immaterial in their effect on the defendant; but we will consider each assignment seriatim. The first assignment of error alleges that the charge of the court confused the provisions of §§ 71 and 73 of the Penal Code, and tended to create upon the minds of the jury the impression that the provisions of § 73 qualify and limit the provisions of § 71. It is well settled that § 73 does not qualify or limit the law of justifiable homicide contained in § 71. Section 73 applies exclusively to cases of self-defense in a mutual combat in which both parties have been at fault. Section 71 refers to cases of apparent danger when the homicide is committed in good faith to prevent the commission of any of the offenses mentioned in § 70, or under the fears of a reasonable man that such an offense will actually be committed unless the person who is actually or apparently about to commit the wrong be killed.

31

Our Supreme Court has held that "instructions as to these two branches of the law of justifiable homicide should not be so given as to confuse the one with the other." In the cases of *Teasley* **v.** *State,* 104 *Ga.* 738, 30 S. E. 938, and *Ragland* v. *State,* 111 *Ga.* 211, 36 S. E. 682, new trials were granted because the practical effect of the charges therein complained of was to deprive the defendant of any right of self-defense unless his life were actually in danger, while, as a matter of law, the defendant had an equal right to kill in order to prevent a felony upon his person or his property.

In this case the trial judge, after charging the jury that "if at the time of the killing of White by the defendant (if the defendant is shown to have killed White), the circumstances were such as to excite the fears of a reasonable man that a felony was about to be committed on his person, and if under the influence of such fears, if such existed, Lee shot and killed White, he would not be guilty of any offense but would be entitled to a verdict of not guilty," repeated the same principle by instructing the jury: "If you believe from the evidence or from the defendant's statement the deceased was not, at the time he was slain by the accused, attempting to commit a felony on the person of the accused by taking his life or otherwise, yet if the circumstances at the time were such to the defendant as a reasonable man, that he believed it was necessary for him to shoot and kill in order to save himself from an assault amounting to a felony upon him, the killing would be justifiable." The court proceeded to say: "If a person kill another in his defense, it must appear that the danger was so urgent, or was apparently so to the defendant at the time of the killing, that in order to save his own life, or to save himself from a serious personal injury amounting to a felony, the killing of the other was absolutely necessary. It must appear also that the person killed was the assailant, or that the slayer had really and in good faith endeavored to decline any further struggle before the mortal blow was given." Had the court charged §73 in immediate connection with the instructions first quoted, the exception might have been well taken, because the jury might have been confused, but the judge, after saying that it must appear that the danger was so urgent and pressing, also referred to the other separate defense by adding, "or was apparently so to the defendant;" and instead of

limiting the jury to a killing done in order to save the defendant's own life, he states, as an additional right of the defendant, the right to kill "to save himself from a serious personal injury;" so that, instead of confusion, the legal rights contained in §§ 71 and 73 were both clearly presented to the jury. One who slays another can only claim immunity under the doctrine of absolute self-defense when the danger is urgent and pressing; and the danger must at least appear to be equally as urgent and pressing before the doctrine of reasonable fears will apply. "The doctrine of reasonable fear as a defense does not apply in any case of homicide where the danger apprehended is not urgent and pressing, or apparently so, at the time of the killing." *Jackson* v. *State*, 91 *Ga.* 271, 18 S. E. 298, 44 Am. St. R. 22. In the case of *Williams* v. *State*, 120 *Ga.* 873, 48 S. E. 368, it was insisted that an instruction similar to the one of which complaint is made in this case was not applicable, and could only be applicable in a case where the evidence disclosed a mutual intent to fight; but the Supreme Court refused to concur in that view.

The plaintiff in error also insists that the law contained in § 71 of the Penal Code is confused with that contained in § 73, and that the impression was created upon the minds of the jury that the law contained in § 73 qualified and limited that contained in § 71, by the following charge of the court: "If you have a reasonable doubt, gentlemen, as to whether the defendant acted, when he shot, under circumstances calculated to excite the fears of a reasonable man, or whether he felt at the time he shot, or had reason to feel from the circumstances, that it was necessary to shoot to save his life, limb, or person, he would be justified in so doing; but gentlemen, I charge you further, if you believe from the evidence in this case, or from the statement of the defendant, that White, the deceased, made an assault upon the defendant with a dangerous weapon, such as a fire-poker, and you find that such a weapon, if it had been used upon the defendant by White, would have been a weapon, thus used, likely to have produced death, yet if you believe that the deceased desisted, and put down the weapon, and was making no effort with such weapon or any other weapon to inflict an injury upon the defendant at the time he was shot by the defendant, and it further appears that the defendant shot him not in the fear of a reasonable man that he was in any serious

personal danger at the time, but that he shot him in a passion aroused as a result of an assault that had ended, and for no other cause, then, gentlemen, the defendant would not be justifiable in thus killing him, but would at least be guilty of the offense of voluntary manslaughter." In our opinion, the defendant could not reasonably expect a more favorable charge than the foregoing, and there is no merit in the objection that §§71 and 73 are confused by the language employed. The instruction just quoted is also objected to, because of the use of the words "at least," and because it is contended that the law relating to homicides growing out of mutual combat was not applicable to the case. We do not agree to the contention that the use of the words "at least" amounted to an intimation of opinion on the part of the judge as to the guilt of the accused. It is a deprecatory rather than an inflammatory expletive. As a matter of fact, if the defendant shot the deceased after an assault already ended and when he was in no possible danger, the court could have very aptly instructed the jury that the killing might be murder.

As to the remaining objections, it is well settled that mutual combat can exist where there is mutual intent to fight, though only one of the parties strikes a blow. We have not discussed the two foregoing assignments of error more at length, for the reason that no complaint is made as to the instructions given by the trial judge on the subject of voluntary manslaughter, and the evidence fully authorized the verdict of the jury finding the defendant guilty of that grade of homicide. Certain evidence was admitted as to statements alleged to have been made by the deceased, which it is contended were improper and prejudicial to the defendant. Mrs. Tigner testified that the deceased said, it was not done in self-defense; that Will Lee did not have to do it; that he regretted very much that it happened; that he wanted to live; that he had lots to live for, but was not afraid to die. He said that he would like to live for the sake of his old mother, who was blind. Upon defendant's counsel objecting to this evidence and moving to strike it out, the court sustained the objection by merely saying "yes," and certified that he intended thereby to sustain the objection and was so understood by counsel. As no further ruling of the court was invoked, consensus tollit errorem; the plaintiff in error can not be heard to complain. *Niagara Ins. Co.* v. *Williams,* 1 *Ga.*

*App.* 603, 57 S. E. 1018. We can not sustain the objection made
to the admission of the evidence relating to dying declarations,
upon the ground that the proper foundation had not been laid, in-
asmuch as it appears to show that there was ample evidence that
the deceased was in articulo mortis and conscious of his condition.
Certainly the evidence was sufficient to require the judge to sub-
mit to the jury, under proper instructions, as he did, the question
as to whether the statements were really dying declarations. Nor
did the court err in refusing the requests of the defendant's coun-
sel to charge upon the subject of dying declarations, because the
legal principles contained in the requests, so far as pertinent to
the case, were fully covered in the charge of the court upon that
subject.

The plaintiff in error insists that the court erred in refusing to
charge the jury, as requested in writing, that "where a party has
evidence in his power and within his reach by which he can es-
tablish a fact if it be true, or a condition if it exists, and omits to
produce it, or, having more certain and satisfactory evidence in
his power, relies upon that which is of a weaker and inferior nature
to prove his claim, a presumption arises that the facts are not as
claimed by him, or that the circumstances do not exist." Movant
contends that this charge was pertinent and applicable and should
have been given to the jury for the following reasons: "It ap-
peared from the evidence of the witness R. O. Settles, as con-
tended, that at the time when movant went into the office of the
railroad company, just prior to the shooting, there was present,
besides the deceased White, and the witness Settles, one John Tay-
lor, who heard and saw everything that occurred between the de-
ceased and movant up to the time of the shooting; that both Tay-
lor and Settles left the room prior to the shooting, Taylor leaving
before Settles; that at the time the shooting occurred Settles was
in such a position that he could not possibly have seen the parties;
but that when Settles arrived on the platform outside the office
where the difficulty took place, immediately afterwards, he found
Taylor standing just outside a window, commanding a view of the
interior of the office. It thus appeared from the State's own evi-
dence that the only eye-witness to the shooting was Taylor, who
was present in the court-room at the time of the trial, but was never
introduced as a witness. No reason was given by the solicitor-gen-

eral why Taylor was not introduced in evidence. It affirmatively appeared that Settles did not see the shooting, and that there was no eye-witness unless it was Taylor. Taylor was in no way connected with deceased or movant. In view of these facts, all of which appeared on the trial of the cause, and in view of the argument of counsel for the defendant thereon, movant contends that it was the duty of the court to submit to the jury the question whether Taylor did see the shooting, and, if so, to charge the rule of law embodied in the request quoted." There is no merit in this ground of the motion, in view of the fact that the defendant could have introduced the witness as well as the State. There was no evidence showing that the witness Taylor actually saw the combat, or that his testimony would be any more certain or satisfactory than that of the witness Settles; and the State, as any other party, has the right to rely upon the rule that the testimony of a single witness is generally sufficient to establish a fact.

There is no merit in any of the remaining grounds of the motion for new trial, all of which relate to requests for charges which were not given by the court. The principle involved in each of these requests was fully and clearly presented to the jury in the charge as delivered, and no possible ground for complaint appears. The defendant might well have been convicted of the offense of murder. He certainly has no reason to complain of the leniency extended by the jury in basing their verdict upon the theory advanced by his own statement as to the offense, and very fully and fairly presented by the judge in his charge to the jury.

*Judgment affirmed.*