## 20842. LEE v. THE STATE.

DECIDED DECEMBER 18, 1930.

G. Y. Harrell, Jule Felton, for plaintiff in error.

Hollis Fort, solicitor-general, Charles W. Worrill, contra.

LUKE, J. Enoch Lee was charged with murder and convicted of voluntary manslaughter. His exception is to the judgment overruling his motion for a new trial.

It is undisputed that the defendant shot Maje Perryman five or six times with a pistol, at the former's filling-station, at about twelve o'clock of the night of December 9, 1929, and that Perryman died from his wounds at about two o'clock in the afternoon of the following day; that there were powder burns on Perryman's clothes; that two of the wounds were most likely fatal; and that

from the appearance of the wounds the pistol was fired towards Perryman's right side.

The State's theory is expressed in the dying declaration of the deceased to the effect that he had no weapon, and was shot without any provocation whatsoever—"killed like a dog." It is also true that no witness saw the deceased have any weapon, and that no weapon was found on his person after the shooting.

The defendant stated to the jury that at about eleven o'clock on the night of the killing, Maje Perryman and Miss W. drove up to his filling-station, and Perryman asked defendant what was all that he had been saying about him; that defendant replied: "All I said is no more than other people are saying—I can prove it;" that Miss W. said to Perryman, "Drive on, drive on, before he hurts you," and that Perryman drove away, saying, "I will be back to see you;" that in a few minutes Perryman returned and asked defendant what it was he could prove; that defendant replied: "All I said was that your car stood up yonder all night the other night;" that Miss W. said it did not; that Perryman again drove away and returned in about thirty minutes; that defendant was in the rear of his filling-station and refused Perryman's request to come outside; that Perryman walked to the far side of the stove, the defendant walked back in the vicinity of the stove because a window-pane was out of a window in the rear of the building; that Perryman again asked defendant to come outside, and the latter said that he did not care to discuss it; and that defendant got the pistol he had because he had been having some trouble with a drunk person who was in his place of business that night, and not because he had any idea of shooting deceased. The defendant's statement continued as follows: "I says, 'I don't care to discuss it, drop it.' He says, 'You started it, God damn it, and I'll finish it;' and he caught me right here. . . When he grabbed me, I grabbed his hand, and from then on I couldn't tell you to save my life how I shot. I thought I was shot. . . I did it to save my life, feeling my life was at stake. I wouldn't have done it for anything in the world if it hadn't been just that way."

George Lee, the son of the defendant, and the only eye-witness to the actual shooting, testified in part as follows: "Mr. Perryman got out of the car and was in the filling-station before I had time to go out and wait on him. . . My father was at the other

end of the counter, towards the east. . . Mr. Perryman stopped about the door the first time and told my father to come outside. Dad told him, no, he wasn't coming outside—he'd rather see him in there. Then Mr. Perryman went over and sat down by the stove. . . He sat there fifteen minutes. . . Mr. Helton said, 'Mr. Lee is a good fellow;' and Mr. Perryman says, 'Well, he may be a good fellow, I ain't afraid of him. I just as soon die one time as another time.' After a while Mr. Perryman got up. Meanwhile my dad had walked to the stove, and Mr. Perryman walked around in front of him. My father come to the stove between the counter and the front wall. He had his back to him, and Mr. Perryman come and faced my father. Mr. Perryman says: 'I want to know what you say you can prove.' . . My dad told him he'd rather not discuss the thing, and asked him to let it drop. Mr. Perryman told my dad: 'God damn it, you started it, and I'll finish it.' Mr. Perryman grabbed my father along the shoulder, and they started to scuffling. He throwed his right hand back there in his hip-pocket. He did that at the same time he caught hold of my father. My father caught Perryman's right hand, and they scuffled very intensely. Father broke loose from Mr. Perryman about half way across the building. . . I do not know how many shots were fired—not exactly. I did not know who was doing the shooting. . . When my father got aloose from Mr. Perryman he did not shoot any more. At the time he was doing the shooting they were clinched. . . I did not see Mr. Perryman have any pistol. . . My father was sober."

The verdict is supported by the evidence, and the court did not err in overruling the general grounds of the motion for a new trial. Indeed, counsel for the plaintiff in error base their claim for a reversal almost entirely upon the single special ground insisted upon by them.

The special ground sets out the following excerpt from the charge of the court: "In order to justify a homicide, there must be something more than mere verbal threats, there must be appearance of imminent danger. The means of inflicting the threatened injury must apparently be at hand, and there must be some manifestation of an intention to inflict the injury presently, but it is not essential that there should be an actual assault, for mere threats and menaces under some circumstances may be sufficient,—all of

which is to be passed upon and determined by the jury trying the particular case." However, the ground assigns error only upon the following part of the excerpt quoted: "The means of inflicting the threatened injury must apparently be at hand." We quote from the ground: "Movant contends these words are only applicable in case of defense in justification in case of open, deadly weapon in possession of deceased, and does not apply to defense of circumstances creating fears of reasonable man. . . No weapon or means of injury was claimed to be apparent on deceased. He relied on all surrounding circumstances as proper basis of fears of reasonable man."

The excerpt from the charge of the court set out in this ground is taken from the case of *Cumming* v. *State*, 99 *Ga.* 662, 664 (27 S. E. 177). Immediately before giving this instruction the court instructed the jury in this language: "And if it is claimed that the killing was done under the fears of a reasonable man, it is for the jury to decide whether or not the circumstances surrounding the killing or homicide were sufficient to justify the excitement of such fears; for the law does not undertake to define what circumstances shall or shall not be sufficient to excite such fears." The language last quoted concludes a charge in almost the exact words of the second headnote of the decision in the *Cumming* case. We also call attention to the last clause of the charge set out in this ground. It is as follows: "all of which is to be passed upon and determined by the jury trying the case."

"The doctrine of reasonable fear as a defense does not apply to any case of homicide where the danger apprehended is not urgent and pressing, or apparently so, at the time of the killing." *Tolbirt* v. *State*, 124 *Ga.* 767 (4) (53 S. E. 327). In *Mincey* v. *State*, 27 *Ga. App.* 4 (3), 5 (107 S. E. 546), the defense rested mainly upon an apparent necessity to kill because, after following, cursing, and threatening the defendant, the deceased "threw his hand to his hip-pocket and made a step towards the defendant." In that case, as in the one under consideration, no pistol was seen or found upon the person of the deceased. In the *Mincey* case, a charge in the language of the instruction here complained of was held not to be erroneous. See also *Best* v. *State*, 26 *Ga. App.* 671 (8), 675 (107 S. E. 266), where it was held that the court did not err in charging the jury in almost the precise language complained of in this case.

364

We are satisfied that there is no merit in this, the only special ground of the motion for a new trial.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*