S97A1354, S97X1396. TURPIN v. TODD; and vice versa.
(493 SE2d 900)

SEARS, Justice.

The appellant, William Lamar Todd, was convicted of murder and armed robbery in 1989, and sentenced to death. This Court affirmed on direct appeal,[1] and the U. S. Supreme Court denied Todd's petition for certiorari.[2] In 1995, Todd filed this habeas action, raising numerous contentions, including ineffectiveness of counsel. The habeas court ruled, among other things, that many of the claims had been decided adversely to Todd on appeal, and were not subject to review on habeas, and that many other claims had been procedurally defaulted. The habeas court, however, reversed Todd's death sentence for two reasons. First, the court found that some of the jurors had had improper contact with the attending bailiff during the sen-

---

[7] 254 Ga. 478, 479-480 (2) (a) (330 SE2d 879) (1985).
[8] Id. at 480 (we held that the classification promotes public confidence in the judicial system by prohibiting persons given longer sentences for serious crimes from returning to the community pending appeal, and that it is rationally related to the legitimate objective of assuring that such defendants will not flee pending the outcome of their appeal).
[1] *Todd v. State*, 261 Ga. 766 (410 SE2d 725) (1991).
[2] *Todd v. Georgia*, 506 U. S. 838 (113 SC 117, 121 LE2d 73) (1992) (rehearing denied 506 U. S. 1015 (113 SC 640, 121 LE2d 570) (1992)).

tencing phase of the trial by asking the bailiff about the meaning of a life sentence and the possibility of parole. The court ruled that the State had the burden to prove this error harmless, concluded that the State had not done so, and reversed Todd's death sentence. Second, the habeas court found that Todd was entitled to have an ex parte hearing before the trial court on his request for funds for independent psychiatric assistance. In this regard, the habeas court concluded that *Brooks v. State*[3] which was decided approximately six months after Todd's conviction, established the right to have such an ex parte hearing and should be applied retroactively to Todd's case. The habeas court also found that the failure to have an ex parte hearing harmed Todd because evidence of Todd's mental condition could have had a substantial impact at the sentencing phase of Todd's trial. The habeas court thus reversed Todd's death sentence. The State has filed a direct appeal of the habeas court's grant of relief, S97A1354, and Todd has filed a cross-appeal from the denial of relief as to guilt-innocence issues and as to the habeas court's adverse rulings on issues relating to the sentencing phase, S97X1396.

## Case No. S97A1354

1. At the outset, we address the dissent's incorrect assertion that the general rule against impeaching verdicts precludes the habeas court or this Court from reviewing the jurors' affidavits that Todd submitted in support of his claim of juror-bailiff misconduct and from assessing the fairness of Todd's sentence of death in light of those affidavits.

(a) In making its argument, the dissent errs in several respects. First, the State does not contend on appeal that Todd's claim must fail because of the general rule against impeaching verdicts. Instead, the State contends that the habeas court erred when it concluded that Todd was not procedurally barred from raising the bailiff-juror misconduct issue. More specifically, the State contends that Todd's failure to raise the issues on direct appeal erected a procedural bar to raising the issue on habeas corpus, and that Todd failed to demonstrate the necessary cause and prejudice to overcome that procedural bar. Thus, the dissent would have this Court reach and decide a significant issue regarding Todd's right to a fair sentencing trial without benefit of briefs by the parties or a review of the issue by the habeas court.

Second, the jurors' affidavits and the habeas court's order indicate that improper communications between the bailiff and the jury on the subject of Todd's parole eligibility may have occurred. If that

---

[3] 259 Ga. 562 (385 SE2d 81) (1989).

is, in fact, the case, our laws provide that the general prohibition against allowing a jury to impeach its verdict cannot be applied to emasculate a defendant's constitutional right to a fair trial, particularly when his life hangs in the balance.

(b) We turn now to examine the jurors' affidavits and the habeas court's findings of fact regarding them.

Juror McKenzie stated in one of his affidavits that "we asked one of the jury bailiffs what a life sentence would mean. I don't recall specifically *the answer he provided, but I know that I was not confident that he would remain in prison for the rest of his natural life.*" Juror Leverett stated the following in one of her affidavits:

> When we were considering what penalty to give Mr. Todd, one thing that concerned me and other jurors was just what a life sentence meant. Because we didn't know what it meant, we asked one of the jury bailiffs how long a life sentence would be. I remember that the answer we got back was that a life sentence really meant about seven years. We immediately voted for the death penalty.

Further, Juror Linda Kosobucki gave an affidavit similar in content to the two described above.

In its findings of fact, the habeas court concluded that:

> there was undeniably a question proposed by the jurors to the Bailiff concerning a life sentence and the possibility of parole, and this question was not reported by the Bailiff to the Presiding Judge. The evidence is inconclusive as to any response by the Bailiff himself.

The last sentence seemingly indicates that the habeas court could not determine whether the bailiff conveyed information to the jury regarding Todd's parole eligibility. In that event, it is possible that the bailiff's only misconduct would be in failing to deliver the jury's note to the trial court. The habeas court also stated, however, that "[w]here a communication from the bailiff to the jury is shown, the burden is on the State to rebut by proof the presumption of harm," and that "there has been improper communication between the jury and the attending bailiff, and the State has not proven that the communication is harmless." Because the only possible improper communication developed by the evidence in this case is that of the bailiff informing the jury about Todd's parole eligibility, the foregoing statements by the habeas court can only reasonably be interpreted as a finding that the bailiff made such a communication. Such a finding, which is not addressed by the dissent, is unquestionably authorized by the jurors' affidavits.

(c) This Court has held that the general rule against impeaching verdicts must succumb to the defendant's right to a fair trial.[4] In this case, if, as is indicated by the habeas court's findings, the bailiff did inform the jury that Todd would be eligible for parole in seven years if the jury sentenced him to life in prison, then fair trial concerns are implicated.

In *Simmons v. South Carolina*,[5] the United States Supreme Court ruled that it was unconstitutional for the defendant to receive the death penalty " 'on the basis of information which he had no opportunity to deny or explain.' [Cit.]"[6] In addition, in *Watkins*, this Court held that the rule prohibiting jurors from impeaching their verdict could not be applied because it would emasculate the defendant's right to a fair trial.[7] In that case, two jurors visited the crime scene and presented their findings to the other jurors. We condemned the introduction of this extra-judicial evidence, ruling that it violated the defendant's right to a fair trial.[8] In doing so, this Court relied on a United States Supreme Court decision holding that improper statements by a bailiff to a jury violated the defendant's right to a fair trial.[9] Finally, this Court has routinely held that due process concerns are raised when communications from a bailiff to a jury are made outside the presence of the defendant and his counsel.[10]

In the present case, the jurors' affidavits and the habeas court's findings raise the specter that the bailiff offered extra-judicial evidence to the jury on the question of Todd's eligibility for parole, and that this extra-judicial evidence was offered outside the presence of Todd and his counsel. Accordingly, the bailiff's conduct implicates Todd's right to a fair trial under the foregoing authorities. Because of the conflict in the habeas court's findings of fact, and because this issue has not been addressed by the parties on appeal, we conclude that it is premature for this Court to rule on the impeachment issue at the present time. However, because we conclude in Division 2 of this opinion that the issue of whether Todd is procedurally defaulted from raising the issue of juror-bailiff misconduct must be remanded to the habeas court, we also conclude that the issue whether the jurors' affidavits may be used to impeach the sentencing verdict should be considered by the habeas court on remand, and that the

---

[4] *Watkins v. State*, 237 Ga. 678, 683-685 (229 SE2d 465) (1976).

[5] 512 U. S. 154 (114 SC 2187, 129 LE2d 133) (1994).

[6] Id. at 2192.

[7] 237 Ga. at 683-685.

[8] Id.

[9] Id. at 684.

[10] E.g., *Lockridge v. State*, 260 Ga. 528 (397 SE2d 695) (1990); *Morris v. State*, 257 Ga. 781, 784 (4) (364 SE2d 571) (1988); *Lamons v. State*, 255 Ga. 511, 512 (340 SE2d 183) (1986); *Battle v. State*, 234 Ga. 637, 639 (217 SE2d 255) (1975).

habeas court should undertake to clarify its findings of fact regarding whether the bailiff communicated to the jury regarding Todd's eligibility for parole.[11]

2. We turn now to the issues specifically raised by the parties. The State contends that the habeas court erred in concluding that Todd was not procedurally barred from raising the bailiff-juror misconduct issue. More specifically, the State contends that Todd's failure to raise the issues on direct appeal erected a procedural bar to raising the issue on habeas corpus, and that Todd failed to demonstrate the necessary cause and prejudice to overcome that procedural bar. Although we agree that Todd's failure to raise the issue on appeal erected a procedural bar, we conclude that Todd has demonstrated cause for failing to raise the issue on appeal. As for prejudice, we conclude that the habeas court applied the incorrect standard in determining prejudice. For this reason, we conclude that the issue of whether Todd has demonstrated prejudice must be remanded to the habeas court for proceedings consistent with this opinion.

(a) A procedural bar to asserting a claim on habeas corpus arises if the defendant failed to timely object to any alleged error or deficiency at trial or on appeal.[12] The procedural bar, however, may be overcome if the petitioner shows, first, an adequate cause for failing to raise the issue earlier and, second, actual prejudice resulting from the alleged error or errors.[13] Here, Todd did not raise the juror-bailiff misconduct issue on appeal, and thus the claim is procedurally defaulted. Therefore, to obtain collateral relief on this claim, Todd must satisfy the cause and prejudice test.

Although the issue whether a petitioner has demonstrated sufficient cause and prejudice to overcome a procedural default has been presented to this Court,[14] this Court has not yet undertaken to define

---

[11] For these reasons, the dissent errs in concluding on the record and findings before this Court that the jurors' affidavits may not be used to impeach the sentencing verdict. Moreover, the dissent relies on cases holding that a jury's consideration of parole in reaching its sentencing verdict raises only state statutory and case law concerns and not constitutional ones. *Dobbs v. Zant*, 963 F2d 1403 (11th Cir. 1991), rev'd and remanded on other grounds, 506 U. S. 357 (113 SC 835, 122 LE2d 103) (1993); *Tucker v. Zant*, 724 F2d 882 (11th Cir. 1984), vacated on other grounds, 474 U. S. 1001 (106 SC 517, 88 LE2d 452) (1985); *Ingram v. Zant*, 26 F3d 1047 (11th Cir. 1994). Those cases, however, only dealt with situations where the jurors had discussed among themselves the issue of the defendant's eligibility for parole, and not with the situation presented by the record before us.

[12] OCGA § 9-14-48 (d); *Black v. Hardin*, 255 Ga. 239, 240 (336 SE2d 754) (1985).

[13] OCGA § 9-14-48 (d); *Black*, 255 Ga. at 240; *White v. Kelso*, 261 Ga. 32, 33 (401 SE2d 733) (1991). Further, even if a petitioner fails to show cause for a procedural default, courts retain the power to grant relief under the writ if the procedural bar would work a miscarriage of justice. OCGA § 9-14-48 (d); *Black*, 255 Ga. at 240; *White*, 261 Ga. at 33. The habeas court, however, did not address the miscarriage of justice issue, and we do not address it on appeal.

[14] *White*, 261 Ga. at 33; *Newsome v. Black*, 258 Ga. 787, 788-789 (374 SE2d 733) (1989);

the meaning of cause and prejudice within the context of procedural default and OCGA § 9-14-48 (d). This case necessitates that we do so. Because the procedural default standards of § 9-14-48 (d) are modeled on the federal standards,[15] we look to federal decisions for guidance on this issue.

Under federal law, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts" to raise the claim that has been procedurally defaulted.[16] In elaborating upon the objective factors that can constitute cause, the Supreme Court has stated that they may include interference by governmental officials "that makes compliance with the State's procedural rule impracticable,"[17] and "'a showing that the factual or legal basis for a claim was not reasonably available to counsel.'"[18] The Supreme Court has further stated that, "[f]or cause to exist, the external impediment, whether it be government interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."[19] In this regard, in *Amadeo v. Zant*,[20] the court stated that the governmental interference in that case established cause because the evidence that had been concealed was not "readily discoverable" by the petitioner's counsel.

Moreover, the United States Supreme Court has held that ineffective assistance of counsel under the standard of *Strickland v. Washington*[21] constitutes cause, but that attorney error falling short of that standard does not.[22] The United States Supreme Court has reasoned that "'if the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the State.' . . . In other words, . . . the error must be seen as an external factor, i.e., 'imputed to the State.'"[23] We find this reasoning persuasive. Moreover, although in *Zant v. Gaddis*[24] we concluded that ineffective assistance of counsel cannot constitute cause, we relied on *Lumpkin v. Ricketts*[25] to reach that conclusion. The United States Court of Appeals for the

---

*Davis v. Williams*, 258 Ga. 552, 553 (1) (372 SE2d 228) (1988).

[15] See *Valenzuela v. Newsome*, 253 Ga. 793, 794-795 (325 SE2d 370) (1985).

[16] *Murray v. Carrier*, 477 U. S. 478, 488 (106 SC 2639, 91 LE2d 397) (1986); *McCleskey v. Zant*, 499 U. S. 467, 493 (111 SC 1454, 113 LE2d 517) (1991).

[17] *McCleskey*, 499 U. S. at 494.

[18] *McCleskey*, 499 U. S. at 494 (quoting *Murray*, 477 U. S. at 488). Accord *Amadeo v. Zant*, 486 U. S. 214, 222 (108 SC 1771, 100 LE2d 249) (1988).

[19] *McCleskey*, 499 U. S. at 497.

[20] 486 U. S. 214 (108 SC 1771, 100 LE2d 249) (1988).

[21] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[22] *McCleskey*, 499 U. S. at 494; *Murray*, 477 U. S. at 486-488.

[23] *Coleman v. Thompson*, 501 U. S. 722, 754 (111 SC 2546, 115 LE2d 640) (1991).

[24] 247 Ga. 717, 719 (279 SE2d 219) (1981).

[25] 551 F2d 680 (5th Cir. 1977).

Fifth Circuit, however, has held that in light of the United States Supreme Court decision in *Murray v. Carrier*,[26] a federal district court erred in relying on *Lumpkin* to rule that ineffectiveness of counsel could not constitute cause.[27] The Fifth Circuit explained that *Lumpkin*, in fact, does not stand for the proposition that constitutional ineffective assistance of counsel cannot constitute cause, but for the proposition that ineffectiveness falling short of constitutional ineffectiveness cannot constitute cause.[28] For these reasons, we similarly construe our decision in *Zant v. Gaddis*, and hold that constitutional ineffective assistance of counsel can constitute cause under OCGA § 9-14-48 (d).

In addition to the guidance gleaned from these federal cases, this Court's decision in *Smith v. Zant*[29] is also instructive. In his second state habeas corpus action, Smith raised for the first time the question whether the State had failed to reveal a deal with a State's witness, and had failed to correct the witness's false testimony at Smith's trial that he had no deal with the State. The State contended that Smith's claim was barred under OCGA § 9-14-51, which precludes a petitioner from asserting a claim in a successive habeas corpus petition unless the habeas court finds that the claim "could not reasonably have been raised in the original or amended petition." In *Smith*, the State contended that Smith's claim could reasonably have been raised in Smith's original petition if he had exercised due diligence in preparing the first petition. This Court disagreed. We held that:

> Since the prosecution has the constitutional duty to reveal at trial that false testimony has been given by its witness, it cannot, by failing in this duty, shift the burden to discover the misrepresentation after trial to the defense. The defendant has a right to rely on the accuracy of the trial testimony of the state's witness where the truth or falsity of his testimony is peculiarly within the knowledge of the state and the state is under a duty to reveal false testimony. Thus, we find unpersuasive the state's argument that the defendant should have discovered the state's breach of duty. As was said in *Williams v. State*, 250 Ga. 463, 466 (298 SE2d 492) (1983): "The state urges that the defendant should have done more than he did to protect himself. We find that the state should have done more than it did to protect the

---

[26] 477 U. S. 478.
[27] *Cook v. Lynaugh*, 821 F2d 1072, 1077 (5th Cir. 1987).
[28] Id. at 1077.
[29] 250 Ga. 645 (301 SE2d 32) (1983).

defendant's rights."

We, therefore, hold that Smith has alleged facts, supported by affidavits, sufficient to satisfy the requirements of OCGA § 9-14-51 (Code Ann. § 50-127) to entitle him to a hearing on the merits of his false testimony claim; i.e., petitioner has shown grounds for relief which could not reasonably have been raised in his original habeas petition.[30]

Thus, this Court in *Smith* concluded that the State's concealment was a sufficient cause for Smith's failure to raise the claim apart from whether Smith, as the State contended, could have discovered the factual basis of the claim with a diligent investigation. *Smith* did not hold, however, and we are not willing to conclude, that the State's concealment of the factual basis of a claim will always constitute cause. We do conclude, however, that it is a significant factor to be considered in the cause equation.

Turning to the present case, the habeas court found that during deliberations on sentencing, the jury proposed a question to the bailiff concerning the meaning of a life sentence and the possibility of parole, and that the bailiff did not report that communication to the trial court. Because these findings are not clearly erroneous, it is clear that the bailiff improperly concealed the factual basis of this claim from Todd at trial and on appeal. This factor thus weighs heavily in Todd's favor. Moreover, the record reveals no other evidence that would have alerted trial or appellate counsel to the fact that jury misconduct or improper jury deliberations occurred at trial.

As for the State's contention that Todd's appellate counsel should have questioned the jurors following trial to attempt to discover the discussions of parole, the ABA Standards for Criminal Justice provide that "[i]f [a] lawyer believes that the verdict may be subject to legal challenge, the lawyer may properly, if no statute or rule prohibits such course, communicate with jurors to determine whether such challenge may be available."[31] The Commentary explains that "[w]here there is evidence of juror misconduct that might undermine the verdict, a lawyer may make inquiries for the purpose of ascertaining the facts, carefully avoiding any harassment."[32] As we have explained in the previous paragraph, there was simply no evidence in this case that would have alerted trial or appellate counsel to the presence of any misconduct by the jury or the bailiff.

Based upon the foregoing considerations, we conclude that Todd has established cause for his failure to raise the claim of jury-bailiff

---

[30] *Smith*, 250 Ga. at 652.

[31] ABA Standards for Criminal Justice, Standard 4-7.3 (2d ed. 1980).

[32] (Emphasis supplied.) Id., Commentary at p. 4.85.

misconduct on appeal.

(b) As explained above, to overcome the procedural bar, Todd must not only demonstrate cause for failing to raise the claim on direct appeal, but also actual prejudice.[33] As with cause, this Court has not yet defined the meaning of prejudice, and as with cause, we take direction on the issue from the federal courts. In *United States v. Frady*, the Supreme Court stated that the "actual prejudice test" places the burden on a convicted defendant to show

> not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.[34]

Moreover, even if the law presumes prejudice for certain errors when they are timely raised, federal courts have held that a convicted defendant who is seeking to overcome a procedural bar does not have the benefit of that presumption of prejudice, and must instead meet the actual prejudice test set forth in *Frady*.[35] We conclude that this rule is appropriate for cases of procedural default, and hold that, absent compelling circumstances not present in this case, a convicted defendant seeking to overcome a procedural bar is not entitled to the benefit of a presumption of prejudice that would otherwise apply.

In addition, if a convicted defendant attempts to establish cause by proving ineffective assistance of counsel, a further issue regarding the actual prejudice test of *Frady* arises. It is whether the prejudice prong of *Strickland v. Washington* is the equivalent of the actual prejudice test set forth in *Frady*, so that a convicted defendant who establishes cause by showing that his attorney committed certain errors that constitute ineffective assistance of counsel also establishes the actual prejudice necessary to overcome a procedural bar regarding those same errors. The Supreme Court has not answered this question, and lower federal courts are divided on the issue. Some federal courts have concluded that the prejudice prong of *Strickland* and the prejudice prong of *Frady* are for all relevant purposes the same.[36] Other federal courts hold that the two tests are analytically

---

[33] E.g., OCGA § 9-14-48 (d).

[34] *United States v. Frady*, 456 U. S. 152, 170 (102 SC 1584, 71 LE2d 816) (1982); *Reece v. United States*, 119 F3d 1462, 1467-1468 (11th Cir. 1997).

[35] *Williams v. Whitley*, 994 F2d 226, 232-233 (5th Cir. 1993); *Hollis v. Davis*, 941 F2d 1471, 1479-1480 (11th Cir. 1991); *Francis v. Henderson*, 425 U. S. 536, 542, n. 6 (96 SC 1708, 48 LE2d 149) (1976).

[36] *Cook v. Lynaugh*, 821 F2d at 1079; *Hollis*, 941 F2d at 1480, 1483; *Deutscher v. Whitley*, 884 F2d 1152, 1156 (9th Cir. 1989).

distinct, but they have offered no explanation of the analytical or practical differences between the two tests.[37] Still other courts have noted the unsettled nature of the issue, but have not undertaken to resolve it.[38] It has been suggested by commentators and at least one court that the prejudice required under *Strickland* and *Frady* are very similar and address the core concern of fundamental fairness.[39] In this regard, Jeffries and Stuntz note that in adopting the actual prejudice test in *Frady*, the Supreme Court cited *Cupp v. Naughten*[40] for the proposition that the habeas prejudice standard is " 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.' "[41] They further note that in *Strickland* the court stated that the " 'ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.' "[42] We are persuaded that the *Strickland* and *Frady* prejudice tests address similar concerns, and we therefore conclude that if a convicted defendant meets the prejudice prong of *Strickland*, he has satisfied the *Frady* prejudice test at least for the errors that support the ineffectiveness claims. As for other claims, the convicted defendant must satisfy the actual prejudice test of *Frady*.[43]

In determining prejudice in the present case, the habeas court relied on the substantive law that governs juror-bailiff misconduct

---

[37] *Zinzer v. Iowa*, 60 F3d 1296, 1299, n. 7 (8th Cir. 1995).

[38] *Rodriguez v. Young*, 906 F2d 1153, 1159, n. 2 (7th Cir. 1990); *Freeman v. Lane*, 962 F2d 1252, 1259, n. 5 (7th Cir. 1992).

[39] Jeffries and Stuntz, Ineffective Assistance and Procedural Default in Federal Habeas Corpus, 57 U.Chi.L.Rev. 679, 684-685, n. 25 (1990); *Mercer v. Armontrout*, 864 F2d 1429, 1434 & n. 3 (8th Cir. 1988).

[40] 414 U. S. 141, 147 (94 SC 396, 38 LE2d 368) (1973).

[41] Jeffries and Stuntz at 684, n. 25.

[42] Jeffries and Stuntz at 684, n. 25 (quoting *Strickland*, 466 U. S. at 696)).

[43] In seeking habeas relief, a convicted defendant may assert a Sixth Amendment ineffectiveness claim, or he may assert that counsel's ineffectiveness constitutes cause to overcome his procedural default, or he may raise ineffectiveness in both contexts. To support the ineffectiveness claim, the convicted defendant may only assert several alleged errors by counsel. He may, however, raise numerous other issues for which he has to establish cause and actual prejudice to overcome a procedural bar. As for these issues, the convicted defendant may rely on his ineffectiveness claim to establish cause, or he may rely on other grounds. In any event, for errors not urged in support of the ineffectiveness claim, the convicted defendant may not rely on the prejudice that he alleges arises from the errors argued in support of ineffectiveness. Instead, he must prove actual prejudice for those claims independent of the prejudice he seeks to establish for the ineffectiveness errors. Of course, as a practical matter, if the convicted defendant prevails on his ineffectiveness claim, he will obtain relief. In evaluating habeas claims, however, it is significant for the habeas court to analyze for "actual prejudice" each alleged error on which the petitioner does not rely to establish his ineffectiveness claim. For example, in the present case, we have effectively concluded that Todd's appellate counsel was not ineffective for not raising the bailiff-juror misconduct issue on appeal. For that claim, Todd must establish actual prejudice apart from the prejudice he seeks to establish for the errors he asserts in support of his ineffectiveness claim.

when that issue is raised on direct appeal. In this vein, the court correctly cited *Battle v. State*[44] for the proposition that, when improper communications occur between a bailiff and jurors, a presumption of prejudice arises that must be rebutted by the State. The habeas court also found that improper communications between the bailiff and the jury had occurred in this case,[45] and concluded that the State had not proven that the communication was harmless. The rule of *Battle v. State*, however, applies on direct appeal, and does not apply when a defendant is procedurally barred from raising an issue of improper communications between the bailiff and the jurors. Because of the procedural bar in this case, Todd had the burden to establish actual prejudice, and the habeas court erred in placing the burden on the State to show that any error was harmless and in applying the presumption of prejudice. Further, because the habeas court applied the incorrect legal standard, this case must be remanded to the habeas court for it to determine whether Todd has proven or can prove on remand that the alleged error actually prejudiced the sentencing phase of his trial.[46]

3. In its second enumeration of error, the State contends that the habeas court erred in ruling that Todd was not barred from claiming under *Brooks v. State*[47] that he was denied due process because he did not have an ex parte hearing on his motion for funds for psychological assistance. Again, we conclude that the habeas court applied the incorrect legal standards for determining cause and prejudice, and we therefore remand the case to the habeas court for it to reconsider these issues in light of this opinion.

To conclude that Todd was not precluded from raising the *Brooks* claim, the habeas court relied on the "pipeline" rule of *Taylor v. State*.[48] According to that rule, "a new rule of criminal procedure . . . will be applied to all cases then on direct review or not yet final. Accord, *Griffith v. Kentucky*, 479 U. S. 314 (107 SC 708, 93 LE2d 649) (1987)." However, Todd's case was before the habeas court for review

---

[44] *Battle v. State*, 234 Ga. at 638-639. Accord *Morris v. State*, 257 Ga. at 784.

[45] See Division 1 (b), supra.

[46] *Valenzuela*, 253 Ga. at 794-797 (after explaining that the new cause and prejudice rules established by OCGA § 9-14-48 (d) in 1983 changed the standards for determining the issues that could be raised on habeas review, and because the habeas court applied the incorrect standards, this Court remanded the case to the trial court for proceedings consistent with our opinion). Accord *In re R.L.L.*, 258 Ga. 628 (373 SE2d 363) (1988) (because it was unclear whether the trial court applied the correct legal standard, this Court remanded for a determination of the relevant issue under the correct standard); *Nesbit v. Nesbit*, 241 Ga. 351, 352-353 (245 SE2d 303) (1978) (because trial court applied an incorrect legal principle in reaching its ruling, we remanded the case to the trial court for reconsideration of the case in light of the correct principles of law).

[47] 259 Ga. 562, 563-566 (385 SE2d 81) (1989).

[48] 262 Ga. 584, 586 (422 SE2d 430) (1992).

pursuant to Todd's petition for writ of habeas corpus. His case therefore was not before the habeas court on direct review, and in fact had become final within the meaning of *Taylor* before Todd filed the present action.[49] Further, as noted by the habeas court, *Brooks* was decided November 2, 1989, about six months after Todd's conviction on May 6, 1989. Todd, however, amended his motion for new trial on April 23, 1990, and his motion for new trial was not denied until February 20, 1991. Todd thus could have, but did not, raise the *Brooks* issue on direct review. Therefore, the cause and prejudice standards set forth above, and not the pipeline rule of *Taylor*, determine whether Todd may now raise the *Brooks* issue. The record thus demonstrates that the habeas court applied incorrect legal standards to determine cause. Similarly, the record shows that the habeas court failed to apply the actual prejudice test of OCGA § 9-14-48 (d). Accordingly, the case must be remanded to the habeas court for it to apply the correct cause and prejudice standards to Todd's *Brooks* claim.

For the foregoing reasons, Case No. S97A1354 is remanded to the habeas court for proceedings consistent with this opinion.

### Case No. S97X1396

4. In his cross-appeal, Todd contends that the habeas court erred in ruling that this Court's decision on Todd's direct review[50] that he had received effective assistance of trial counsel precluded Todd from relitigating that issue on habeas. We disagree. Absent compelling reasons, such as a miscarriage of justice, an issue actually litigated and decided on direct appeal is precluded from being relitigated on habeas corpus.[51] We conclude that no such compelling reason exists with regard to Todd's claim that he received ineffective assistance of trial counsel.[52]

5. Todd further contends that the habeas court erred in ruling that he received effective assistance of appellate counsel. The habeas court separately ruled on appellate counsel's effectiveness during the motion for new trial proceedings and on appeal to this Court. For the reasons that follow, we conclude that the issue of effectiveness of appellate counsel at both stages of the appellate proceedings must be

---

[49] See *Griffith*, 479 U. S. at 321, n. 6 ("By 'final,' we mean a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied.").

[50] *Todd*, 261 Ga. at 772 (13).

[51] *Baxter v. Kemp*, 260 Ga. 184, 185 (1) (391 SE2d 754) (1990).

[52] See *Hunter v. State*, 260 Ga. 762, 763 (399 SE2d 921) (1991) (an earlier habeas corpus judgment ruling that Hunter had received effective assistance of counsel precluded Hunter from relitigating that issue).

remanded to the habeas court.

(a) As for appellate counsel's effectiveness during the motion for new trial proceedings, the habeas court ruled that that issue had been decided by this Court adversely to Todd, and that the issue had been procedurally defaulted. Both of these rulings are erroneous.

The habeas court's ruling that this Court decided that Todd received effective assistance of counsel during the motion for new trial proceedings is based upon an amicus curiae brief filed on Todd's behalf on appeal by the Georgia Resource Center.[53] That brief urged that Todd's appellate counsel had been ineffective during the motion for new trial proceedings, and that when Todd questioned the performance of appellate counsel at a hearing on his motion for new trial, the trial court should have appointed another attorney to represent Todd.[54] The amicus brief had requested this Court to remand the case to the trial court for a hearing on the ineffectiveness issue raised by that brief. We declined to do so, concluding that the trial court had adequately investigated Todd's dissatisfaction with his lawyer; that the trial court did not err in concluding that Todd's appellate counsel "was representing the defendant well";[55] and that "[a] criminal defendant is not entitled to the appointment of another attorney as a matter of right whenever he expresses his dissatisfaction with his present attorney."[56] Thus, this Court did not rule that Todd had received effective assistance of counsel during the motion for new trial proceedings, but only that the trial court adequately investigated Todd's complaints regarding appellate counsel, and properly concluded that Todd was not entitled to appointment of a new attorney. Further, this Court properly did not address the merits of appellate counsel's effectiveness because, at the hearing on his motion for new trial, Todd did not have an attorney other than his appellate attorney about whom he was complaining, and because Todd did not have the right to represent himself and raise this issue.[57] For these reasons, the habeas court erred in concluding that effectiveness of appellate counsel at the motion for new trial hearing was decided adversely to Todd on direct review.

Similarly, the habeas court erred in ruling that the foregoing issue was procedurally defaulted. Todd was represented at all times during the direct review process by the same attorney, and that attorney cannot raise a claim of ineffectiveness against himself.[58]

---

[53] This Court did not address whether the Resource Center had standing to file a brief on Todd's behalf while he was being represented by another attorney.

[54] *Todd,* 261 Ga. at 772-773.

[55] Id. at 773.

[56] Id.

[57] *Johnson v. State,* 266 Ga. 775, 778-779 (470 SE2d 637) (1996).

[58] Id. at 779.

Todd thus has not procedurally defaulted his claim of ineffectiveness of appellate counsel during the motion for new trial proceedings.

As it does not appear that the habeas court made any ruling on the merits of Todd's claim of ineffectiveness of appellate counsel with regard to the motion for new trial, that issue must be remanded to the habeas court for further proceedings.

(b) As for appellate counsel's effectiveness on direct appeal to this Court, the habeas court ruled that that claim had no merit. However, one of Todd's chief allegations of ineffectiveness of appellate counsel was that appellate counsel failed to raise the *Brooks* issue on appeal. The habeas court did not have to address this allegation of attorney error because, as previously noted,[59] the habeas court relied on the "pipeline" rule to conclude that Todd was entitled to relief on the *Brooks* issue. In our opinion today, however, we have concluded that the habeas court incorrectly relied on the "pipeline" rule to grant Todd relief on the *Brooks* issue.[60] We therefore conclude that we must remand the issue of ineffective assistance of appellate counsel to the habeas court for it to reconsider the issue in light of this opinion.

6. Numerous other issues that Todd raises were previously raised on appeal to this Court and decided adversely to Todd. Accordingly, as we conclude that no compelling circumstances exist that would permit Todd to relitigate those claims, the habeas court correctly ruled that Todd was barred from relitigating them. The claims barred under this rule include all claims specifically raised by Todd on direct review and decided by this Court, as well as those claims not specifically raised by Todd on direct review, but which this Court undertakes to determine as part of its direct review in death penalty cases.[61] Moreover, the claims are barred from review on habeas whether they are cast as claims of prosecutorial misconduct or as claims of trial court error. With the foregoing in mind, a non-exhaustive list of the barred claims include the following: Todd's claims regarding voir dire; Todd's claim that the trial court erred by failing to charge on voluntary manslaughter and theft by taking; Todd's claims regarding the three alleged prejudicial closing arguments made by the prosecutor at the guilt-innocence phase of the trial that were decided on direct review; Todd's claims regarding all sentencing phase closing arguments by the prosecutor; Todd's claims regarding the admission into evidence of a piece of the victim's skull; Todd's claims regarding arguments about, and the admission into

---

[59] See Division 3, pp. 830-831.
[60] Id.
[61] E.g., OCGA § 17-10-35 (c) (1) (this subsection directs this Court to "determine: (1) Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor"). See *Cargill v. State*, 255 Ga. 616, 637 (340 SE2d 891) (1986).

evidence of, victim impact evidence; Todd's claims that the death penalty was imposed as a result of prejudice and other arbitrary factors; Todd's claims that the trial court erred in denying Todd's motion for funds for expert assistance, except as it relates to the *Brooks* issue; Todd's claim that the State failed to comply with OCGA § 17-7-210; Todd's claim that the trial court erred in admitting evidence of crimes committed in Alabama; Todd's claims regarding the admission into evidence of allegedly gruesome photographs; Todd's claims regarding a motion for mistrial that he made when the prosecutor was cross-examining him during the sentencing phase of the trial; and Todd's claims regarding the alleged disproportionality of his death sentence compared to similar cases.[62]

Our review of the record on direct review demonstrates that the habeas court did err in ruling that several claims had been litigated on direct review and were therefore barred by this Court's decision. Those claims include Todd's claim under *Batson v. Kentucky*;[63] his claim that he was improperly excluded from bench conferences; his claim regarding the unconstitutionality of the Unified Appeal; and his claims (other than those regarding voluntary manslaughter and theft by taking) regarding jury charges at the guilt-innocence and sentencing phases of his trial. These claims must be remanded to the habeas court for proceedings consistent with this opinion, including any inquiry by the habeas court into whether these claims are procedurally barred.[64]

7. Todd's claim that the habeas court erred in failing to sufficiently articulate its findings regarding the ineffective assistance of trial and appellate counsel is without merit. First, we have affirmed the habeas court's ruling that Todd is precluded from relitigating his claim of ineffective assistance of trial counsel. The habeas court's ruling on this point is sufficient. Second, we have remanded Todd's claim of ineffective assistance of appellate counsel, rendering unnecessary any ruling on the sufficiency of the habeas court's findings on that issue.

8. Todd has failed to carry his burden to demonstrate that the habeas court erred in denying various motions filed by Todd with the

---

[62] The court has attempted to make this list exhaustive. The court, however, has been hampered in this regard by Todd's failure to acknowledge in his brief to this Court which claims, other than ineffective assistance of trial counsel, the habeas court ruled that Todd was precluded from raising under the foregoing rule. Similarly, with regard to claims other than ineffective assistance of trial counsel, he has failed to demonstrate how the habeas court erred in that ruling. Because habeas petitioners have the burden to demonstrate such error on appeal, they should be careful to acknowledge that a habeas court has ruled that a claim is barred from habeas review and to demonstrate to this Court why that ruling was in error.

[63] 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

[64] See Division 8 of this opinion, infra.

habeas court.

9. The remaining issues raised in the cross-appeal were subject to findings of procedural default by the habeas court. Because Todd asserts that appellate counsel's constitutionally deficient performance constitutes cause for that default, and because we have determined that his ineffectiveness claim must be remanded to the habeas court, we likewise remand the issues that the habeas court found were procedurally defaulted for that court to consider in light of its ruling on ineffectiveness of appellate counsel. If on remand the habeas court determines that Todd received effective assistance of appellate counsel, then the habeas court may reinstate its findings of procedural default.

*Case remanded in Case No. S97A1354. All the Justices concur, except Carley, Thompson and Hines, JJ., who concur in part and dissent in part.*

*Judgment affirmed in part; reversed in part; and remanded in part in Case No. S97X1396. All the Justices concur, except Carley, Thompson and Hines, JJ., who concur in part and dissent in part.*

CARLEY, Justice, concurring in part and dissenting in part.

In Case No. S97A1354, I concur in Division 3 of the majority opinion and in the remand for the habeas court's application of the correct legal standard of cause and prejudice to Todd's claim under *Brooks v. State*, 259 Ga. 562 (385 SE2d 81) (1989). As to Divisions 1 and 2, I agree with the majority that the habeas corpus court also applied the incorrect legal standard in its consideration of the issue of bailiff or juror misconduct, but I cannot agree that it is necessary to remand on that issue. In my opinion, the judgment of the habeas court simply should be reversed as to that issue. In Case No. S97X1396, I concur fully in Divisions 4 and 8, wherein the majority finds no merit in certain of Todd's enumerations of error. As to Divisions 6 and 7, I concur in part and dissent in part. I dissent to the entirety of Divisions 5 and 9.

### Case No. S97A1354

Todd contended that he was entitled to habeas relief because, during the deliberations on sentencing, the jury improperly questioned the bailiff concerning the meaning of a life sentence and the possibility of parole. This alleged improper questioning was not raised in Todd's direct appeal and was, therefore, procedurally defaulted "absent a showing of cause for noncompliance . . . and of actual prejudice. . . ." OCGA § 9-14-48 (d). See also *Black v. Hardin*, 255 Ga. 239, 240 (4) (336 SE2d 754) (1985). The habeas court found that Todd made a sufficient showing under OCGA § 9-14-48 (d) and,

thus, that he proved a meritorious ground for reversing the death sentence.

In finding that Todd had met his burden of showing the "actual prejudice" component, the habeas court relied upon *Battle v. State*, 234 Ga. 637 (217 SE2d 255) (1975). *Battle* does hold that, when improper communications occur between a bailiff and jurors, a presumption of prejudice arises which the State must rebut. As the majority correctly holds, however, *Battle* applies on direct appeal, not in habeas corpus proceedings. "The writ of habeas corpus is not to be used as a means of obtaining a second appeal. [Cit.]" *Brown v. Ricketts*, 233 Ga. 809, 811 (1) (213 SE2d 672) (1975). Todd's habeas corpus action is governed by OCGA § 9-14-40 et seq. OCGA § 9-14-48 (d) places the burden on Todd to show both "cause" and "actual prejudice." *Black v. Hardin*, supra. To demonstrate "actual prejudice," the petitioner must show,

> not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.

(Emphasis in original.) *United States v. Frady*, 456 U. S. 152, 170 (IV) (102 SC 1584, 71 LE2d 816) (1982). It follows that the majority correctly holds that the habeas court erred in concluding that Todd met his burden of proving "actual prejudice" by relying upon the "presumed prejudice" rationale of *Battle*. See *Francis v. Henderson*, 425 U. S. 536, 542, fn. 6 (96 SC 1708, 48 LE2d 149) (1976).

In *Valenzuela v. Newsome*, 253 Ga. 793 (325 SE2d 370) (1985), we remanded where, as here, the habeas court applied the incorrect standard in addressing a procedurally barred claim. However, here, unlike in *Valenzuela*, a review of the record shows that the sole evidentiary support for the alleged bailiff or juror misconduct consists of affidavits given by four jurors. "The affidavits of jurors may be taken to sustain but not to impeach their verdict." OCGA § 17-9-41. This rule applies in death penalty cases. *Spencer v. State*, 260 Ga. 640, 643 (3) (398 SE2d 179) (1990); *Hall v. State*, 259 Ga. 412, 414 (3) (383 SE2d 128) (1989). "The rule is deeply rooted in Georgia law and promotes important public policy considerations." *Oliver v. State*, 265 Ga. 653, 654 (3) (461 SE2d 222) (1995). See also *Spencer v. State*, supra at 643 (3). Thus, in addition to applying the incorrect standard to Todd's claim, the habeas court also considered evidence which is inadmissible under OCGA § 17-9-41.

There are constitutional limitations to the application of OCGA § 17-9-41, as where members of the jury intentionally gather extrajudicial and prejudicial evidence and communicate such information to

the other jurors. *Watkins v. State*, 237 Ga. 678, 685 (229 SE2d 465) (1976). Compare *Oliver v. State*, supra at 654 (3); *Spencer v. State*, supra at 643-644 (3). However, the prohibition against a jury's consideration of parole in reaching its verdict is based on Georgia statutory and case law, and not on federal or state constitutional law. OCGA § 17-8-76 (a); *McGruder v. State*, 213 Ga. 259, 266-267 (7) (98 SE2d 564) (1957); *Dobbs v. Zant*, 963 F2d 1403, 1411 (VI) (11th Cir. 1991), rev'd and remanded on other grounds, 506 U. S. 357 (113 SC 835, 122 LE2d 103) (1993); *Tucker v. Zant*, 724 F2d 882, 892 (II) (11th Cir. 1984), vacated on other grounds, 474 U. S. 1001 (106 SC 517, 88 LE2d 452) (1985). Indeed, the defendant has no federal constitutional right "to prevent the jury, during the sentencing phase of a capital trial, from considering the possibility of parole if sentenced to life imprisonment." *Ingram v. Zant*, 26 F3d 1047, 1052 (11th Cir. 1994); *Dobbs v. Zant*, supra; *Tucker v. Zant*, supra. Thus, those portions of the jurors' affidavits which show the jury's discussion or consideration of parole cannot be used to impeach the verdict in this case. *Hall v. State*, supra at 414-415 (3). Likewise, any portions of the jurors' affidavits which tend "to show that the deputy sheriff or the bailiff had improper communications with the jury could not be considered by the judge. . . ." *Tolbirt v. State*, 124 Ga. 767, 770 (1) (53 SE 327) (1906). See also *King v. State*, 92 Ga. App. 616, 619-620 (89 SE2d 585) (1955). Compare *Battle v. State*, supra (bailiff's testimony). Moreover, the jurors' affidavits raise, at the most, an inference that the bailiff answered a question about parole. "To allow such inference would be to allow the jurors to do by indirection that which they could not do directly, namely, impeach their verdict." *Morakes v. State*, 201 Ga. 425, 434 (4) (40 SE2d 120) (1946).

The majority holds that OCGA § 17-9-41 is inapplicable because "fair trial concerns are implicated" by the jurors' affidavits. However, the majority concedes that the affidavits would be inadmissible to show that "the jurors had discussed among themselves the issue of the defendant's eligibility for parole. . . ." Thus, the majority apparently concludes that a constitutional violation occurs and OCGA § 17-9-41 is rendered inapplicable, simply because the bailiff is alleged to have had some part in discussions which Todd had no constitutional right to prevent. There are important public policy considerations which underlie OCGA § 17-9-41, including the necessity of keeping inviolate the sanctity of juror deliberations, the desirability of promoting the finality of jury verdicts and the protection of jurors from post-trial harassment. *Watkins v. State*, supra at 684. The majority cites no authority which supports a wholesale abandonment of these public policy considerations where, as here, the jurors' affidavits do not show a violation of the defendant's constitutional rights. *Parker v. Gladden*, 385 U. S. 363 (87 SC 468, 17 LE2d 420) (1966), which was

cited in *Watkins*, supra at 684, did not involve the question of the admissibility of juror's affidavits and, in any event, the statement attributed to the bailiff in *Parker* related to a prejudicial extrajudicial expression of opinion as to the guilt of the defendant rather than an alleged statement of the legal effect of a life sentence. *Lockridge v. State*, 260 Ga. 528 (397 SE2d 695) (1990) is distinguishable for that same reason. In *Morris v. State*, 257 Ga. 781, 784 (4) (364 SE2d 571) (1988), the State conceded the existence of communications between the bailiff and jurors, and the applicability of OCGA § 17-9-41 was not considered. *Lamons v. State*, 255 Ga. 511 (340 SE2d 183) (1986) and *Battle v. State*, supra, are totally inapplicable, since they do not involve a juror's post-verdict attempt to impeach the verdict. The holding in *Watkins*, supra, is based upon misconduct of the jurors themselves, who violated the defendant's Sixth Amendment rights by intentionally gathering prejudicial extrajudicial evidence as to his guilt. Under the majority's holding, OCGA § 17-9-41 is meaningless so long as a juror's post-verdict affidavit implies any oral communication on the part of a bailiff.

Even if consideration of the jurors' affidavits was not otherwise precluded by OCGA § 17-9-41, those affidavits still would not authorize the grant of habeas relief unless they demonstrated a "substantial denial" of Todd's constitutional rights. OCGA § 9-14-42 (a). As previously noted, however, the preclusion upon a sentencing jury's consideration of the issue of parole eligibility is based upon Georgia statutory and case law, and does not arise from any right of the accused under the state or federal constitution. Thus, even if the jurors' affidavits were not otherwise inadmissible, they still would be irrelevant and insufficient to authorize the grant of habeas relief. See *Green v. Dunn*, 257 Ga. 66 (355 SE2d 61) (1987); *Parker v. Abernathy*, 253 Ga. 673 (324 SE2d 191) (1985).

There is no contention that, in the habeas proceeding, the court denied Todd the opportunity to produce admissible and relevant evidence which would demonstrate the occurrence of juror or bailiff misconduct which was so egregious as to violate his constitutional right of due process. Because Todd supported his allegation of bailiff or juror misconduct solely by the inadmissible and irrelevant jurors' affidavits, the habeas court committed reversible error by relying upon that alleged misconduct as a basis for requiring the imposition of a life sentence or a new sentencing trial. See *Jordan v. Fowler*, 104 Ga. App. 824 (1) (123 SE2d 334) (1961). A remand on this issue would serve no useful purpose because Todd has offered *no* probative evidence of bailiff or juror misconduct to which the habeas court could apply the correct legal standard. Compare *Valenzuela v. Newsome*, supra. Therefore, I would reverse the habeas court as to this issue and I respectfully dissent to the majority's remand.

*Case No. S97X1396*

On his motion for new trial, Todd was not represented by his trial counsel, but by newly appointed appellate counsel. The habeas court ruled that the effectiveness of this appellate counsel had been addressed in the direct appeal and could not be relitigated. In Division 5 (a), the majority holds that this ruling of the habeas court is erroneous. However, in *Todd v. State*, 261 Ga. 766, 773 (13) (410 SE2d 725) (1991), we refused to remand the case

> to the trial court for further hearing on the issue of the effectiveness of post-conviction counsel. The trial court gave the defendant an opportunity to voice his complaints about his post-conviction counsel and the trial court, after hearing from the defendant and hearing from his counsel about the latter's qualifications, experience, and preparation in this case, found that counsel was competent and was representing the defendant well. [Cit.] The trial court's investigation was sufficient. A criminal defendant is not entitled to the appointment of another attorney as a matter of right whenever he expresses his dissatisfaction with his present attorney. [Cit.]

Thus, it is clear that the issue of the effectiveness of the appellate counsel who was appointed to represent Todd on his motion for new trial was addressed and resolved on the merits. If an allegation of alleged ineffectiveness had any arguable merit, this Court would not have declined to remand, but would have ordered that that issue be addressed in the trial court by new counsel. See generally *Kennebrew v. State*, 267 Ga. 400, 401 (2) (480 SE2d 1) (1996). Instead, this Court considered the allegations of ineffectiveness raised by Todd in the trial court and concluded that no "further hearing" on that issue was necessary. Resolution of the issue of the effectiveness of appellate counsel in *Todd* may or may not comport with the subsequent procedure endorsed in *Johnson v. State*, 266 Ga. 775, 778 (9) (470 SE2d 637) (1996) (effectiveness of trial, not appellate, counsel). However, it is immaterial whether the procedure used in *Todd* to resolve the effectiveness issue remains viable, so long as that issue was, in fact, resolved therein. Because the effectiveness issue was raised and resolved in Todd's direct appeal, the allegations of ineffectiveness cannot be relitigated in a subsequent habeas proceeding. See *Roulain v. Martin*, 266 Ga. 353 (1) (466 SE2d 837) (1996). Any allegation of the ineffectiveness of the appellate counsel appointed to represent Todd on motion for new trial which was not raised in *Todd*, but which was raised for the first time in this habeas proceeding, has been pro-

cedurally defaulted. Thus, the habeas court correctly held that the alleged ineffectiveness of appellate counsel appointed to represent Todd on his motion for new trial was not a viable ground for habeas relief.

On his direct appeal to this Court, Todd was represented by yet another appointed counsel. Several of Todd's contentions relate to the alleged ineffectiveness of this appellate counsel. Among Todd's assertions is that the ineffectiveness of his appellate counsel is relevant to the "cause" component of OCGA § 9-14-48 (d). According to Todd, the "cause" for the failure to raise certain issues on the direct appeal was the ineffectiveness of his appellate counsel. In Divisions 2 (a), 7 and 9, the majority concludes that ineffectiveness of appellate counsel can constitute "cause" under OCGA § 9-14-48 (d). I cannot agree with that conclusion. It is true that, for purposes of federal habeas, ineffectiveness of counsel can constitute "cause" for a procedural default. *Murray v. Carrier*, 477 U. S. 478, 488 (II) (106 SC 2639, 91 LE2d 397) (1986). However, a claim of ineffectiveness of counsel generally must "be presented to the state courts as *an independent claim* before it may be used to establish cause for a procedural default" in a federal habeas proceeding. (Emphasis supplied.) *Murray v. Carrier*, supra at 489 (II). In a state habeas proceeding pursuant to OCGA § 9-14-40 et seq., the reverse applies. Therein, the alleged ineffectiveness of counsel may be an independent claim for habeas relief, but cannot satisfy the "cause" component of OCGA § 9-14-48 (d).

> To hold otherwise would in effect render the "cause" requirement a nullity. *Lumpkin v. Ricketts*, 551 F2d 680 (5th Cir. 1977), cert. den., 434 U. S. 957 (1977). In the absence of the "cause" requirement, the wise . . . counsel might always bypass a . . . challenge to preserve an issue for appeal on habeas corpus in the event of conviction. [Cit.]

*Zant v. Gaddis*, 247 Ga. 717, 719 (3) (279 SE2d 219) (1981). Thus, Todd's contention that the alleged ineffectiveness of his appellate counsel is sufficient "cause" for the procedural default of the issues which were not raised in the direct appeal

> must be rejected . . . for, if accepted, it would effectively eliminate any requirement of showing cause at all. If a petitioner could not demonstrate any legitimate cause, he would only have to raise the spectre of ineffective assistance of counsel to get his challenge heard. This we refuse to sanction.

*Lumpkin v. Ricketts*, supra at 683. Thus, the habeas court did not err in failing to consider the alleged ineffectiveness of Todd's appellate

counsel as "cause" for addressing the merits of any issue which was not raised in the direct appeal.

In my opinion, the alleged ineffectiveness of Todd's appellate counsel is relevant only insofar as it is asserted as an independent claim for habeas relief. *Zant v. Gaddis*, supra at 719 (3). Obviously, this claim was not procedurally defaulted, since it could not be raised by Todd prior to this habeas proceeding. *White v. Kelso*, 261 Ga. 32 (401 SE2d 733) (1991). Accordingly, the alleged ineffectiveness of Todd's appellate counsel must be considered on the merits. In Division 5 (b), the majority concludes that the habeas court did not consider the merits of whether appellate counsel was ineffective for failing to raise the *Brooks* issue on Todd's direct appeal, and orders a remand for a reconsideration of that issue. It appears, however, that the habeas court did consider the alleged ineffectiveness of Todd's appellate counsel and found that this claim had not been proven. Unlike the majority, I find nothing to indicate that, in so finding, the habeas court did not consider any and all allegations of ineffectiveness, including the failure of appellate counsel to raise the *Brooks* issue on direct appeal. Todd does not assert that the habeas court failed to consider the *Brooks* issue in addressing the alleged ineffectiveness of appellate counsel, but contends only that the habeas court erred in finding that appellate counsel was not ineffective for failing to raise that issue on appeal. However, the mere failure of appellate counsel to have raised that issue on appeal does not demand a finding of ineffectiveness. The constitutional guarantee of counsel does not mean errorless counsel or counsel judged ineffective by hindsight, but counsel who is reasonably likely to render and who does render reasonably effective assistance. *McGill v. State*, 263 Ga. 81, 82 (2) (428 SE2d 341) (1993). Having reviewed the record, I cannot say that the habeas court erred in finding that Todd failed to meet his burden of proving the ineffectiveness of his appellate counsel.

Division 7 of the majority opinion holds that the habeas court erred in finding that a number of Todd's claims had been addressed and resolved in the direct appeal and that those claims must be remanded for further consideration by the habeas court. I agree with this resolution as to all but the following three claims: the claim of a *Batson v. Kentucky,* 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986) violation in jury selection; the claim that Todd was improperly excluded from bench conferences; and, the claim that the Unified Appeal is unconstitutional. Although the habeas court erred in finding that these claims had been addressed and resolved in *Todd*, the habeas court *also* found that these three claims were procedurally defaulted and "fail to raise grounds upon which relief can be granted." Thus, notwithstanding the erroneous finding that the claims had been resolved in *Todd*, the habeas court's order contains

an alternative finding that the claims authorized no relief under OCGA § 9-14-48 (d). There is nothing to show that, contrary to the habeas court's finding, the three claims were not procedurally defaulted and do raise grounds which would require habeas relief. As previously discussed, the alleged ineffectiveness of counsel is not sufficient to show the "cause" necessary to excuse a procedural default. A judgment that is right for any reason must be affirmed, even in a capital case. See *Zant v. Stephens*, 250 Ga. 97, 98 (1) (297 SE2d 1) (1982). Accordingly, it is my opinion that the habeas court's correct alternative finding that the three claims afford no relief under OCGA § 9-14-48 (d) controls, and I dissent to the majority's holding that the erroneous finding that these claims were resolved in *Todd* mandates a remand for further proceedings.

I am authorized to state that Justice Thompson and Justice Hines join in this opinion.

DECIDED DECEMBER 5, 1997 —
RECONSIDERATION DENIED DECEMBER 19, 1997.

*J. Gray Conger, District Attorney, Chattahoochee Circuit, Thurbert E. Baker, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Paige R. Whitaker, Assistant Attorney General, Sell & Melton, Robert D. McCullers,* for appellant.
*Stephen C. Bayliss,* for appellee.